AMERICAN MALLEABLES COMPANY, DEFENDANT IN ERROR, v. THE TOWN OF BLOOMFIELD, IN THE COUNTY OF ESSEX AND STATE OF NEW JERSEY, PLAINTIFF IN ERROR.

Argued July 1, 1912—Decided November 18, 1912.

1. There is power to alter or amend a contract entered into between a railroad company and a municipality under statutes (*Comp. Stat., pp.* 4234, 4266, 4258) for the elimination of grade crossings, provided such alterations or amendments concern those matters which are included in the objects of the said legislation, namely, the security of life and property to be effected by a change of grade in railroad tracks or streets.

2. A municipal body has no power to indemnify one against his own act which may result in damage to the property of another where public rights are not concerned.

3. A mere resolution of the governing body of a municipality will not serve to repeal or modify a duly enacted ordinance. To do so necessitates action of like formality to that required for the enactment of the original ordinance.

4. An ordinance judicial in its nature cannot be repealed wholly or in part except upon due and proper notice.

On error to the Supreme Court, whose opinion is reported in 53 *Vroom* 79.

For the plaintiff in error, *Charles F. Kocher* and *Edward M. Colie.*

For the defendant in error, *Pitney, Hardin & Skinner.*

The opinion of the court was delivered by

Voorhees, J. This writ of error, running to the Supreme Court, brings to test the judgment of that court in setting aside a resolution of the town council of the town of Bloomfield, adopted March 6th, 1911, and all proceedings thereunder. The resolution thus removed authorized and directed the mayor and clerk to enter into and execute on behalf of the municipality a supplementary agreement with the rail-

roads, providing for the modification of a previous contract between them, dated July 12th, 1910, for the elimination of grade crossings, made pursuant to certain acts of the legislature, viz., General Railroad act, 1903 (*Comp. Stat., p.* 4234), "An act to authorize any town or city to enter into contracts with railroad companies," &c., approved March 20th, 1901 (*Comp. Stat., p.* 4266), and "An act to provide funds," &c., approved March 30th, 1904. *Comp. Stat., p.* 4258.

The original contract, dated July 12th, 1910, had been sanctioned by an ordinance, and had for its purpose the abolition of grade crossings in the town.

The prosecutor, the defendant in error in this court, owned the land upon which its manufacturing plant is located, abutting on Mechanic street, which ran between the railroad and the prosecutor's property, and enjoyed the use of a switch or industrial siding from the main line of the railroad across Mechanic street at grade, to the prosecutor's lands. The scheme to elevate embodied the vacation of Mechanic street, and the substitution in lieu of the former industrial switch, of an elevated siding to leave the main line in its elevated position, and thence to be carried upon abutments to the prosecutor's lands.

The vacation of Mechanic street was in fact accomplished before the date of the resolution under review, and the work under the original contract had progressed so far that the railroad tracks had been moved westerly within the limits of what was formerly Mechanic street. The work of replacing the industrial siding in its proposed elevated position had so far advanced that the abutments had been completed for it to pass from the main tracks. Possession of the land, lying within the bounds of Mechanic street (vacated), reverting to the prosecutor upon its vacation, had been permitted to the railroad company, and the industrial sidings formerly existing had been removed.

A petition had been presented to the council on January 3d, 1911, for the opening of a new street, which, for convenience, may be called New Mechanic street, to run practically parallel to old Mechanic street, close to, but westerly of its site, and

through lands of the prosecutor. Because of an. incorrect description of the new street, the petition was withdrawn, and again, in corrected form, presented on January 16th, 1911. The proceedings to open this new street were restrained by injunction, out of the Court of Chancery, on April 3d, 1911, still in full force. Such was. substantially the condition of affairs at the time of the passage of the resolution, and the execution on the date of its passage of the supplementary contract, which modified the original contract, by eliminating the industrial sidings of the prosecutor. In this resolution and contract the railroad stipulated: "To purchase and acquire by condemnation or agreement all of the lands required by them for the said improvement, lying within the boundary lines of said Mechanic street as heretofore existing, being specifically all of the land lying within the lines of Mechanic street abutting the lands of the American Malleables Company and the Hedden Iron Construction Company and which would revert to the full possession, use and enjoyment of the said American Malleables Company and the said Hedden Iron Construction Company upon the vacation of Mechanic street as aforesaid. The town shall pay to the railroad companies all money, costs and expenses in excess of twenty-five hundred dollars which the railroad companies shall be required to pay out and expend in and for the acquiring of all the said lands acquired by it within the lines of said Mechanic street for the purpose aforesaid.

"The town shall indemnify and save harmless the railroad companies and their respective successors and assigns from and against all claims, demands, suits, actions, damages, costs and expenses which the railroad companies or either of them shall incur or be subjected to, by or on account of the American Malleables Company and Hedden Iron Construction Company and all persons whomever by reason of the omission or elimination or failure to reconstruct and maintain an industrial siding or switch leading from the main tracks of the railroad companies to the lands and property of the American Malleables Company.

"No other or further amendment, alteration or change in the said agreement between the parties hereto dated July 12th, 1910, or in the work therein provided for as contemplated by this supplemental agreement except as herein specifically described, and in all other respects the aforesaid agreement, dated July 12th, 1910, shall be and remain in full force, virtue and effect."

It is argued in behalf of the town that, by the decision of the Supreme Court, there has been a denial of power, under the existing legislation, to enter into a contract such as the one under consideration is. Undoubtedly, sufficient power has been given by the legislature, to enable the town to contract for changes in streets, their vacation or opening, for the purposes of securing safety to the public, by means of the elimination of grade crossings, and thereby promote the interest of the municipalities. Such contracts, when properly made, the municipalities have plenary power to carry into execution, by proper municipal proceedings, in the manner provided by their respective charters. *Morris & Cummings Dredging Co.* v. *Jersey City,* 35 *Vroom* 587, and, of course, incidentally, the structures to be erected may be made sightly, perhaps to the point of being ornamental. *Morris and Essex Railroad Co.* v. *Newark,* 47 *Id.* 559. Nor can the power to alter and amend such a contract be doubted, provided such alterations and amendments concern those matters which are included in the objects of the legislation in question, namely, the security of life and property, effected by change of grade in railroad tracks. But the abandonment of the proposed industrial sidings, at the time of the change in the original contract, did not tend to this purpose. Their proposed reconstruction was to be upon private properties, and thus the agreement to do away with them did not tend to promote the public good, or to confer any advantage upon the public.

Moreover, the opening of New Mechanic street was no part of the proposed work, as set forth in the original ordinance. It may be true that the subject had been mooted during the progress of the development of the elevation scheme, and that certain independent steps may have been instituted, looking

to the opening .of such a street, and there may have been in contemplation that if the new street should be opened, the sidings would constitute an obstruction to it. But for aught that appears, the street might never be opened. True, an application by property owners, pursuant to the Town act (*Pamph. L.* 1895, *p.* 218), under which Bloomfield has its legal existence, to open the new street was made, and is under consideration, but, as before remarked, formed no part of the work, as originally contemplated in the ordinance and contract, nor is its location and opening now provided for in the supplemental contract. It may never be opened, and the siding upon prosecutor's private property may, nevertheless, be destroyed.

If the contracting parties had, in their supplemental agreement, provided for the opening of the new street, as incidental to the work of the elevation, and for the abolition of the sidings, as obstructive to such new street, and dangerous to the public, a different question would have been presented for decision.

The present agreement deals only with structures upon private property, except that it provides for the expenditure of public money for the benefit of the railroad companies in their acquisition, for their own purposes, of the lands formerly constituting the site of the vacated street to the amount of the cost of such acquisition, in excess of $2,500, at which price the companies had theretofore secured an option to purchase, contingent upon the construction of the industrial sidings.

The town, under the terms of the former agreement, was free from liability for damage for vacation of Mechanic street, in excess of $2,500, and was not obliged to stand the cost of acquiring land in that street, after its vacation, for the benefit of the railroad company.

In addition to the foregoing, the town agreed to indemnify the railroad companies for damages, which might accrue to them, by reason of the omission of the switches. The amendment to the contract, as matters stood at the time of its execution, in effect, compels the town to pay for the prosecutor's

damages, caused by the removal of its private siding by the railroad companies.

A municipal body has no power to indemnify one against his own act which may result in damage to the property of another, where public rights are not concerned. 2 *Dill. Mun. Corp.*, § 814. There may be cases where the grade crossing legislation may give such authority, when the act resulting in damages is inseparably connected with, the agreed plan to carry out the object of such legislation, but that is not this case.

The point has been made, that an ordinance as distinguished from a resolution is required to authorize a contract on the part of the municipality for the opening or vacating highways, or altering the lines or grades of streets, inasmuch as these acts are required by the statute under which Bloomfield is incorporated, to be done by ordinance, and such contracts are not self-executing. *Clark* v. *Elizabeth,* 32 *Vroom* 565.

It is conceded that we have no authoritative decision in this state upon this point. It is not necessary to recount the arguments made for and against limiting the exercise of such power, by ordinance only, for the original contract had in fact sprung from an authorization in the form of an ordinance. The further insistence is that the supplemental resolution assuming to alter an ordinance and the contract cannot stand. That proposition must be sound, if the original contract needed municipal action, by way of ordinance to support it.

The plaintiff in error asserts authority in the original contract itself for its modification by mere resolution, in the following clause: "As it may be found necessary by both parties hereto, during the progress of said work, to make changes in plans or parts of plans, or in the construction of said work, it is hereby agreed that when such changes are approved by resolution of the town council of Bloomfield the work shall proceed in accordance therewith. A copy of such resolution shall be made a part of this agreement, and a certified copy thereof shall be furnished to the companies," and, in another

paragraph, as follows: "It.is further understood and agreed that either party hereto shall not be required to assume or participate in any expense or pay any sum of money whatever, or do any work whatever, or contribute any lands or property in connection with any work, matters or things in this agreement mentioned or referred to or shown upon the annexed plans, except the expenses, moneys, work, land and property which are in this agreement specifically provided to be borne, paid, done, performed or contributed by said respective parties, unless same shall be hereafter otherwise agreed to by a supplemental agreement duly executed." It argues that by reading these two paragraphs together, it is to be gathered that changes by resolution, not involving extra expense or work, on the part of the railroad company, would be binding upon it, but if extra expense and work were thus rendered necessary, then to obligate the railroad to perform, there must be "a supplemental agreement duly executed."

The argument is not persuasive. The contrasting provisions indicate rather that the railroad and the town, in carrying on the work, may find minor changes necessary, and when such changes have the approving resolution of the municipal body, it shall be sufficient authority, on the part of the town, for the company to proceed accordingly. These changes evidently refer to those not substantially altering the scheme, or in any way involving the rights of third parties. The later-quoted provision binds the contracting parties to adhere closely to the terms of the original contract, except where a duly executed supplemental agreement shall change it. We conclude that these provisions are not sufficient to warrant by resolution an alteration of the scope and magnitude of that here presented.

To return, then, to a consideration of the effect of a resolution working a modification of an ordinance. The latter is of a higher grade than the former. There is abundance of authority holding that an ordinance cannot be amended, repealed or suspended except by an act of equal dignity. *2 Dill. Mun. Corp.* (5th ed.), § 572; *1 Sm. Mod. L. Corp.*, § 543; *28 Cyc.* 380; *21 Am. & Eng. Encycl. L.* 1003; *City of*

*Paxton* v. *Bogardus,* 201 *Ill.* 628; *Bills* v. *City of Goshen,* 117 *Ind.* 221; *Cascaden* v. *City of Waterloo,* 106 *Iowa* 673. We are of opinion that by the weight of authority a mere resolution will not serve to repeal or modify a duly-enacted ordinance, and that to do so, necessitates action of like formality to that required for the enactment of the original ordinance.

But, if we are in error in this regard, yet there is an insuperable obstacle to sustain the modified agreement in this case. It interfered with private rights, and, therefore, was judicial in its character. Its express object was to abolish a private siding, existing at the time of its passage upon private property. It is settled by a long line of decisions that municipal action which affects or adjudicates regarding property rights, to be valid, can be taken only after notice, actual or constructive, has been given to those whose rights are affected. *Cape May* v. *Railroad Company,* 31 *Vroom* 224; *Camden* v. *Mulford,* 2 *Dutcher* 49; *Moore* v. *Haddonfield,* 33 *Vroom* 386. In the last case, it was held by this court that "if the original ordinance was a judicial act, it could not be abrogated even in part, save upon notice."

The prosecutor was a property owner, and it does not appear that it, or any other property owner, had actual notice, or notice by construction, of the contemplated resolution, or of the execution of the contract which followed immediately upon its passage. Every intendment must be made against the fact that any notice was given. This is sufficient to set aside the resolution.

The town, however, contends in opposition that the prosecutor has, in fact, no property rights to be affected, and that nowhere do any facts appear supporting such right in the siding, and that the passage of the resolution and the making of the contract were in no sense judicial acts.

The argument is that the prosecutor has failed to show any contractual relation with the railroad companies either with regard to the original switch or the proposed switch to be substituted. It does appear that a switch existed there originally, and the agreement shows that a new one was to be substituted.

The contention is that because a switch existed gave no right to its continuance; that it is there by sufferance, and cites *Swift* v. *Delaware, Lackawanna and Western Railroad Co.,* 21 *Dick. Ch. Rep.* 48, as authority for the claim that no right to maintain the switch originally existed in the prosecutor, and that in fact it was unlawful, because crossing a public highway.

Whatever may have been the relation between these parties before the making of the agreement of July 12th, 1910, the railroad companies, by that contract, agreed to construct a substituted siding, and the city assented to it, and in the carrying out of the general scheme of elevation, it may be that sufficient authority was vested in the town, as well as in the railroad companies to make a valid contract for the preservation of the prosecutor's access to the railroad tracks in this manner, and under the existing conditions. Moreover, by the terms of the agreement, a benefit was conferred upon the prosecutor in consideration for which the railroad companies had been enabled to acquire their option to purchase the lands of the prosecutor required for their improvement, at a lower price than they otherwise would. So that whatever may have been the *status* of the siding originally, it seems clear now that the prosecutor has a property right to its construction. In *Styles* v. *Long Company,* 41 *Vroom* 301, this court held that one, not a party to a contract, has no *status* to sue upon it, if he be a person with whom the contracting parties never meant to come into contractual relations, and that a possible benefit to such party by the performance of a contract is not enough to give him the right to maintain an action upon it. To have that effect, it must appear that the contract was made for his benefit. The agreement fairly shows, not only that the railroad companies and the town did contemplate contractual relations with the prosecutor, but that the former actually contracted for its benefit by agreeing to the construction of the substituted sidings, as delineated upon the plans accompanying that instrument.

It seems to us to be plain that property rights flowed to the prosecutor from it, and that by the enforcement of the supplemental resolution, they will be swept away, without notice.

It is not an instance of third parties, being merely indirectly and incidentally advantaged through performance of the contract. To permit the blotting out of the rights of the prosecutor, in this summary way, would be equivalent to appropriating property without compensation and without due process of law.

The judgment of the Supreme Court under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VOORHEES, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, TREACY, JJ. 9.

*For reversal*—GARRISON, TRENCHARD, JJ. 2.