(December 21, 1912.)

JOHN CHAMBERLAIN et al., Respondents, v. THE CITY OF LEWISTON, a Municipal Corporation, Appellant, and J. O. MAXON, C. HENRY PAYNE, J. D. C. THIESSEN, J. W. MAXON, and DEAN D. STAIR, Respondents.

[129 Pac. 1069.]

LABOR AND MATERIALMAN'S LIEN—CONFLICT OF LAWS—DESCRIPTION OF PROPERTY—DESTRUCTION OF IMPROVEMENT OR REPAIR—PRINCIPLE OF LIEN LAW—IMPROVEMENT ON MAIN WORKS—USE AND CONSUMPTION OF MATERIAL—LIEN ON WHOLE PROPERTY.

(Syllabus by the court.)

1. The act of March 13, 1909 (1909 Sess. Laws, 165), does not repeal sec. 5111 of the Rev. Codes, but affords an additional and

cumulative remedy, and specially provides protection for the state, city or other municipal corporation entering into such contract, and should be construed in harmony with the provisions of sec. 5111, Rev. Codes.

2.   A description of the property as "the pumping plant and waterworks system of the city of Lewiston, said waterworks system being located on the south bank of the Clearwater river about one and one-half miles above the point where the Clearwater river flows into the Snake river," is a sufficient description upon which to predicate a lien against the city's waterworks system, and is sufficient for identification thereof.

3.   The fact that the labor performed and material furnished for the construction, alteration and repair of any building, structure or other works was carried away by floods and high water without any fault of the man who performed the labor and furnished the material, does not deprive the laboring man or materialman from preferring his liens under the statute and such lien attaching to the real estate on which the work was done or improvement made.

4.   Under the laws of this state, the test for a mechanic's lien is: Was the labor performed or material furnished in the construction, alteration or repair of the building, structure or other works? And the right to a lien is not dependent upon the actual enhanced value of the property on which the labor was performed or for which the material was furnished.

5.   The purpose of the statute is to compensate the man who performs labor under or furnishes material to be used in the construction, alteration or repair of a building or structure, irrespective of the value which such labor or material may add to the real estate.

6.   Where labor was performed and material furnished in the construction of an intake pipe and the placing of a steel cage around the pipe as an extension and addition to a waterworks system, a lien filed for labor performed and material furnished in connection with such work will attach to the waterworks system, notwithstanding the fact that the intake pipe on which the work was done was never completed or actually attached to the system.

7.   Where a city entered into a contract to have an intake pipe added to the pipe of its waterworks system, extending the main out into the bed of the river, and the contractors found it necessary to build a coffer-dam in the stream in order to carry on the work or to employ some other means which would accomplish the same end, *held,* that laboring men and materialmen would be entitled to a lien for labor performed upon such coffer-dam and materials furnished in the construction thereof as a necessary incident to the

performance of the contract, although such dam and material included therein would not be a part of the completed work and would not be of any use to the city when finally completed.

8. In preferring a lien for labor and material under the mechanic's lien laws of this state, a lien will be allowed for material furnished and actually used and consumed in the construction of the building or other structure, irrespective of the fact that such use and consumption may not be in the main building or structure itself, but in such work as was necessarily incident to the carrying on of the principal work and discharging the contract.

APPEAL from the District Court of the Second Judicial District for Nez Perce County. Hon. E. C. Steele, Judge.

Action for foreclosure of mechanic's lien. Judgment for plaintiffs and defendant appealed. *Affirmed.*

Fred E. Butler for Appellant.

The description in the Chamberlain cases, both in the notices of liens as well as in the complaint, findings and decree, is so indefinite, that the property cannot be located on the ground, and therefore all of the liens in the Chamberlain case should fail. (Boisot on Mech. Liens, secs. 431, 433; Bloom on Mech. Liens, sec. 399, and cases cited; Rockel on Mech. Liens, sec. 103, and cases cited; 27 Cyc. 157, 158, and note 88; *Runey v. Rea,* 7 Or. 130; *Kellogg v. Littell & Smythe Mfg. Co.,* 1 Wash. 407, 25 Pac. 461.)

There is nothing in the evidence or in the findings which shows that any of the four tracts described in the complaint is the tract that lies out in the river, which latter tract is the only tract that is lienable, if any of the claims in these cases are lienable at all. (*Wharton v. Douglas,* 92 Pa. 66.)

Under the provisions of the mechanic's lien law, it is the duty of the trial court to ascertain the amount of land necessary for the convenient use of the property to be sold, and it is error not to do so. (*Robertson v. Moore,* 10 Ida. 115, 77 Pac. 218; *Williams v. Porter,* 51 Mo. 441; *Ranson v. Sheehan,* 78 Mo. 668; *Mayes v. Murphy,* 93 Mo. App. 37.)

Where an independent piece of work is to be done, it does not become a part of the system until fully constructed.

(*Creer v. Cache Valley Canal Co.*, 4 Ida. 280, 38 Pac. 653, 95 Am. St. 63; *Hill v. La Crosse etc. R. R. Co.*, 11 Wis. 214; Phil. Mech. Liens, sec. 182.)

In states where the mechanic's lien statute is worded similarly to that of our statute, it seems to be almost uniformly held that the destruction of the structure destroys the lien. (*Goodman v. Baerlocher*, 88 Wis. 287, 60 N. W. 415, 43 Am. St. 893; *Presbyterian Church v. Stettler*, 26 Pa. 246; *Wigton's Appeal*, 28 Pa. 161; *Humboldt Lumber Co. v. Crisp*, 146 Cal. 686, 81 Pac. 30, 106 Am. St. 75; 2 Am. & Eng. Ann. Cas. 811; *Watson v. Alta Investment Co.*, 12 Cal. App. 560, 108 Pac. 48.)

Materials that are used but not incorporated in the work, such as tools, lumber for scaffolding, lubricating oil for machinery, a temporary bridge to be used while another is being constructed, machinery used in construction, are not within the statute. (Boisot on Mech. Liens, sec. 123; Rockel, Mech. Liens, sec. 18; *Basshor v. Baltimore etc. R. R. Co.*, 65 Md. 99, 3 Atl. 285; *Oppenheimer v. Morrell*, 118 Pa. 189, 12 Atl. 307; *Standard Oil Co. v. Lane*, 75 Wis. 636, 44 N. W. 644, 7 L. R. A. 191; *Stimson Mill Co. v. Los Angeles Traction Co.*, 141 Cal. 30, 74 Pac. 357; *Goodman v. Baerlocher*, 88 Wis. 287, 60 N. W. 415, 43 Am. St. 893.)

Where materials have been furnished for a structure that was never erected, or where the structure or building was destroyed prior to the use of the materials, no lien should be allowed. No lien should be allowed when the materials are not actually used. (*Lee v. King*, 99 Ala. 246, 13 So. 506; *Silvester v. Coe Quartz Mine Co.*, 80 Cal. 510, 22 Pac. 217; *Bewick v. Muir*, 83 Cal. 368, 23 Pac. 389; *California-Portland Cement Co. v. Wentworth Hotel Co.*, 16 Cal. App. 692, 118 Pac. 103, 113; *Chapin v. Persse & Brooks Paper Works*, 30 Conn. 461, 79 Am. Dec. 263; *Hunter v. Blanchard*, 18 Ill. 318; *Roose v. Billingsly etc. Commission Co.*, 74 Iowa, 51, 36 N. W. 885; *Hill v. Powers*, 45 Kan. 560, 26 Pac. 13; *Simmons v. Carrier*, 60 Mo. 582; *Fitzpatrick v. Thomas*, 61 Mo. 515; *Schulenberg v. Prairie Home Inst.*, 65 Mo. 295; *Weir v. Barnes*, 38 Neb. 875, 57 N. W. 750; *Antlers Park Reg. Min.*

*Co. v. Cunningham,* 29 Colo. 284, 68 Pac. 226; *Hinckley etc. Iron Co. v. James,* 51 Vt. 240.)

There can be no recovery in these cases by reason of the total failure of the contractors to perform their contract; nothing has been earned by the contractors; there is nothing owing to them from the city of Lewiston, and therefore no property of the city of Lewiston is lienable. (*Valley Lumber Co. v. Nickerson,* 13 Ida. 682, 93 Pac. 24; *Fitch v. Howitt,* 32 Or. 396, 52 Pac. 192.)

The basis for the interposition of a lien is the mere equity in favor of him who, by his labor or materials, has benefited the owner. (*Jones v. Great Southern Hotel Co.,* 86 Fed. 370, 30 C. C. A. 108.)

Counsel have been unable to cite a precedent where there was no benefit appropriated. (30 Am. & Eng. Ency. of Law, 1249.)

The distinctions set forth in the briefs of respondents between the New York and Pennsylvania rules are not applicable to a case where no building, structure or machinery has been begun, to say nothing of completed. (*Doll v. Young,* 149 Ky. 347, 149 S. W. 854; *Wigton's Appeal,* 28 Pa. 161; *Presbyterian Church v. Stettler,* 26 Pa. 246.)

Material for molds to aid in concrete construction, which is afterward taken away, is not lienable. (*Rittenhouse & Embree Co. v. Brown & Co.,* 254 Ill. 549, 98 N. E. 971.)

G. Orr McMinimy, Jas. E. Babb and McNamee & Harn, for Respondents.

Where a new remedy or mode of proceeding is authorized without an express repeal of a former one relating to the same matter, it is to be regarded as merely cumulative, creating a concurrent remedy, and not as abrogating the former mode of procedure. (*Raudebaugh v. Shelley,* 6 Ohio St. 307; *Ban v. Columbia Southern R. Co.,* 117 Fed. 21, 54 C. C. A. 407; *Winters v. George,* 21 Or. 251, 257, 27 Pac. 1041.)

If there appears enough in the description to enable a party familiar with the locality to identify the premises intended to be described, with reasonable certainty, it will be sufficient

to sustain a mechanic's lien. (*Beckstead v. Griffith,* 11 Ida. 738, 83 Pac. 764; *Robertson v. Moore,* 10 Ida. 115, 77 Pac. 218; *DeWitt v. Smith,* 63 Mo. 263; *Griffith v. Maxwell,* 20 Wash. 403, 55 Pac. 571.)

The building of this extension to the intake pipe of the Lewiston water system was an alteration and repair of the entire system, and we were entitled to a lien on the entire system if we desired, and that lien attached the minute the laborer went to work. (*Pacific States Sav. Loan etc. Co. v. Dubois,* 11 Ida. 319, 83 Pac. 513.)

This system has not been destroyed, and if it had been we would not be asking for a foreclosure of a lien on the pumping plant thereof. We were not compelled to file a lien on all of the water system. (*Creer v. Cache Valley Canal Co.,* 4 Ida. 280, 38 Pac. 653, 95 Am. St. 63.)

It cannot be said that the labor used in building this cofferdam could ever benefit the work on any other coffer-dam any more than the work in excavating the twelve feet of earth could benefit some other excavation. It is gone, forever, and these people who have toiled at the work cannot recover for their services if we cannot recover in these proceedings. (*Barker & Stewart Lumber Co. v. Marathon Paper Mills Co.,* 146 Wis. 12, 130 N. W. 866, 36 L. R. A., N. S., 675.)

The performance of the contract and the amount due from the owner to the contractor does not affect the rights of laborers to liens. (*Weeter Lumber Co. v. Fales,* 20 Ida. 255, 118 Pac. 289, Ann. Cas. 1913A, 403.)

AILSHIE, J.—This action was instituted for the foreclosure of a mechanic's lien against the property of the city of Lewiston for labor performed and material furnished to J. O. Maxon and C. Henry Payne, original contractors with the city of Lewiston. Maxon and Payne entered into a contract with the city of Lewiston on the 7th day of September, 1910, wherein and whereby they agreed to construct an extension to the intake pipe to the pumping plant of the water system of the city of Lewiston for a stipulated sum. It appears that the city was the owner of and maintained a waterworks sys-

tem and a pumping plant in the city of Lewiston, the pumping plant being located on the Clearwater river, about one and one-half miles above the point where the Clearwater river flows into the Snake river, and that the city was desirous of extending its pipe-line farther out into the bed of the stream, and for that purpose of laying a new intake pipe and properly guarding and protecting the same. Maxon and Payne gave a bond to the city of Lewiston in the sum of $5,000, executed by sureties, and thereafter entered upon the discharge of their work. In carrying out the contract, they found it necessary to build a coffer-dam in the river, and about the time this dam was completed a freshet occurred in the Clearwater river and the dam and all the work and material was carried away by the flood. The contractors thereupon abandoned the work, and nothing further was done thereafter, and the persons who had performed labor and furnished material in connection with this work or for the completion of this work filed their liens, and in due time actions were prosecuted in the district court, and judgment and decrees were entered in favor of the several parties for the amounts due and appeals have been prosecuted. Four appeals are pending, but the cases were consolidated for the purposes of argument, and one opinion will serve to dispose of all the cases.

In this case the claim is for labor done and performed in the construction of the coffer-dam. The other cases are for materials furnished. A number of questions are presented, and we will deal with them briefly in the order in which they arise.

(1) This action was prosecuted under the provisions of sec. 5111 of the Rev. Codes, which provides as follows:

"Every subcontractor, laborer or other person, who performs labor, or furnishes material, for any original contractor or subcontractor, to be used in the construction, alteration or repair of any building, machinery or other structure, for any county, city, town or school district, has a lien upon such building, machinery or structure, and all the provisions of this

chapter respecting the securing and enforcing of mechanics' liens shall apply thereto, so far as applicable.''

Sec. 5110 of the Rev. Codes defines the right to a lien, and names the persons and conditions under which liens may be had, while sec. 5111, as above set out, extends the right of lien to buildings, machinery or structures owned by any ''county, city, town or school district.'' Appellant contends, however, that the foregoing section was repealed by implication by act of March 13, 1909 (1909 Sess. Laws, p. 165), which act provides that where any person enters into a contract with the state, any county, city, town, school or irrigation district, or any quasi-public corporation in the state, for the construction, alteration or repair of any public building, public work or quasi-public work, the contract price of which exceeds the sum of $200, he shall be required before commencing such work to execute the usual penal bond in a sum equaling sixty per cent at least of the contract price, etc. Then follows the detail of procedure and order of preference and payment of any claim or judgment obtained on such bond.

It is contended by counsel for appellant that this latter act providing another remedy necessarily repeals the provisions of sec. 5111. The contention, however, does not appear sound. The statute of 1909 in no way conflicts with the former statute. It rather seems to be a mere additional and cumulative remedy, and was especially intended to protect the state, city or other municipal corporation. We are bound to assume that when the legislature passed the act of March 13, 1909, they were aware of the provisions of sec. 5111 of the Rev. Codes. Notwithstanding this fact, they embodied no repealing clause in the act of 1909. There is no difficulty about construing the two provisions harmoniously and giving force and effect to both. In such case, the court is not justified in holding the former act invalid or repealed.

The supreme court of California dealt with a somewhat kindred question in *Bates v. Santa Barbara County,* 90 Cal. 543, 27 Pac. 438, and *French v. Powell,* 135 Cal. 636, 68 Pac. 92, and held the acts thereunder considered to be merely additional and cumulative remedies.

(2) It is next contended that the description contained in the liens, complaints and decrees in these cases is insufficient. The general description used is as follows: ''The pumping plant and waterworks system of the city of Lewiston, said waterworks system being located on the south bank of the Clearwater river about 1½ miles above the point where the Clearwater river flows into the Snake river.'' It seems to us that there will be no difficulty about locating the waterworks system of the city of Lewiston, and that the description herein would enable an officer to very readily locate and point out the property. This court is presumed to know the geography and political subdivisions of the state (sec. 5950, Rev. Codes), and we are likewise at liberty to take notice of the size and location of the city of Lewiston. It is hardly to be presumed that the city itself owns more than one waterworks system, and so there can be no confusion or uncertainty about locating the system here described and intended. .

In *Phillips v. Salmon River etc. Co.*, 9 Ida. 149, 72 Pac. 886, it was held that a description of the mining claim contained in a notice of lien in the following language was sufficient: ''The mining claim known as the 'Salem Bar,' situated on the Idaho side of the main channel of the Snake river one-half mile north or down the river from the mouth of the Grande Ronde, in Nez Perce county, Idaho.'' The authorities abundantly sustain us in this view. (*Hotaling v. Cronise*, 2 Cal. 60; *Tibbetts v. Moore*, 23 Cal. 208; *Tredinnick v. Red Cloud Con. Min. Co.*, 72 Cal. 78, 13 Pac. 152; *Emerson v. Gainey*, 26 Fla. 133, 7 So. 526; *Durling v. Gould*, 83 Me. 134, 21 Atl. 833; Phillips on Mechanics' Liens, sec. 379; Bloom on Mechanics' Liens, sec. 404.)

(3) It is contended that since all the work that was done and all the material that was furnished were swept away by the flood or freshet in the Clearwater river, and there is nothing left either of the work or material, that no lien claim can be sustained. In this connection it is also contended that materials furnished and labor performed in preparatory work, such as false works and a coffer-dam, as was done in this case, and which do not constitute a part of the real work or

structure as it is intended to stand in the completed form, are not lienable and cannot furnish a basis for liens upon the real estate or the property which it was intended to improve, alter or repair. The argument embodying these phases of the question rests upon the theory, which is maintained by many authorities, that the lien law only intends to allow a lien for such labor and material as have actually gone into and become a part of the property of the land owner and enhanced its value. This position is maintained and fortified by a great many authorities. That doctrine, however, has been questioned and doubted in this state, and the great number of statutes which have been enacted in this state providing for liens for materials furnished and labor performed show clearly on their face that in a great many instances the question of enhanced or increased value to the property has not been taken into consideration by the legislature, and was not intended to be the test upon which a lien should be based. On the contrary, it is apparent from a number of our statutes authorizing liens of various and sundry kinds that the true test meant to be applied by the legislature is the value of the labor or material furnished and used in or about the construction, alteration or repair of the building, structure or other works. As far back as the year 1903, the writer of this opinion, in *Thompson v. Wise Boy Mining Co.*, 9 Ida. 363, 74 Pac. 958, had occasion to express himself upon this principle involved in our lien laws and said:

"It seems to us, however, that as these laws have come to be extended to mines and mining properties, this line of reasoning has to a great extent become faulty. To say that the laborer who goes into the placer mine and washes out all the gold it contains, or into a quartz mine and extracts and removes the values it contains, has added to the value of the mines, is not a course of reasoning that appeals to us very forcibly.

"The legislature in enacting these laws did not have in mind the protection of the mine owners, but rather the protection of the laborers. They were not contemplating, when they enacted this law, the probability of the laborers enhanc-

ing or depreciating the value of the prospects, mining claims, or mines, as the case might be, but rather that the men who were employed and sent out to do work upon such properties should be entitled to a lien on them for their services.   To say that the laborer is worthy of his hire is to tell him what he already knows; but what he wants to know and what the legislature evidently intended is that this maxim will be carried a step further, and that he shall be assured that he is not only worthy of his hire, but that he will get his pay, and that the property upon or about which he worked shall be liable for such pay.''

Counsel for respondents, after reviewing the general purpose and policy of these statutes, has aptly summed the whole matter up in the following sentence: ''The law rests on the policy that one who initiates work and may by slight precaution avert injury to innocent persons affected thereby, shall be charged with the duty of taking that precaution.''   This states the ultimate purpose intended.   The person or corporation owning property and desiring to make alterations or improvements or erect structures thereon has it in his or its power to absolutely and unqualifiedly protect men who perform labor or those who furnish material in or about such works, and it is the purpose and policy of the law to charge such owner with that duty to the extent of the value of the property on which such structure, repair or improvement is placed.   The lien statute operates *in rem* and not *in personam;* it creates no personal charge against the owner of the property, but rather a charge against the property to the extent of its value.   Now, the fact that the improvement or structure or the work done is carried away by the elements or destroyed cannot relieve the property owner, nor can it pay the man who has furnished his labor or material in carrying on the work or destroy the lien given him by statute.   So far as we have been able to examine the authorities cited by appellant holding that there is no lien where the property has been lost or destroyed, they are dealing chiefly with an original contractor, and under that principle of law that one who contracts to erect and complete a building or structure and deliver it in the completed

condition so as to satisfy the terms of his contract must suffer the loss, if loss occurs, before the completion and acceptance of the contract.

This principle, however, can have no application to the laboring man and the materialman; the man who is laboring on the building has no control over it, neither does the man who furnishes the material for its construction have the control or custody of the building. The original contractor, however, may take out a builder's insurance and protect himself as he progresses with the work.

It is further argued in this connection that the building of a coffer-dam was no part of the contract in this case, and that the city would have no use for that after the work was completed; that this was only an incident to the placing of the piping and cage that were to be constructed for the intake to the water-pipe and system. It is insisted that the contractors might have employed some other method of doing this rather than the construction of a coffer-dam, and that this material and labor was not a part of the contract. This may be legally and technically correct, but the application of such a course of reasoning would go wide of giving substantial justice. When the city contracted for the laying of this pipe and the doing of this work, its agents and officers knew at the time that it would be necessary to construct a coffer-dam or use some other means or method that would accomplish the same result in order to do the work and make the repair that the contract called for. If this be true, and it undoubtedly is, then we fail to see what difference it makes to the city whether this labor and material was employed and used in building the coffer-dam or in procuring some other means or contrivance through and by which the work should be carried on and completed. When a man contracts to have a building erected, he knows that the contractors and builders will be obliged to have scaffolding and other material that does not actually go into the building, but which may practically be used and consumed and destroyed in the course of the work. Such material and the labor incident thereto is as much a part of the

contract as if it were specified and set forth in the contract itself.

These views have been very ably set forth and sustained by Mr. Chief Justice Winslow in the supreme court of Wisconsin in *Barker & Stewart Lumber Co. v. Marathon Paper Mills Co.*, 146 Wis. 12, 130 N. W. 866, 36 L. R. A., N. S., 875, and this authority has been approved and the same view ably set forth in *Darlington Lumber Co. v. Westlake Construction Co.*, 161 Mo. App. 723, 141 S. W. 931. See, also, *Valley Lumber Co. v. Nickerson*, 13 Ida. 682, 93 Pac. 24; *Weeter Lumber Co. v. Fales*, 20 Ida. 255, 118 Pac. 289.

(4) Considerable has been said both in the briefs and the oral argument as to the extent of lien to be allowed in this case should any lien be allowed at all. The extension pipe and intake were to be constructed out in the bed of the Clearwater river. The work was done there. No work was actually and literally done upon any of the pipe or machinery or any part of the present water system, and so it is insisted that whatever lien there is can only attach to the bed of the stream where the work was carried on. This contention overlooks the fact that the contract called for a repair or alteration to the water system and pumping plant which would attach itself to and become a part of the system. The contract called for extending the pipe out into the stream, setting a steel cage there to inclose the intake to the pipe and certain works necessary and essential to the completion of this repair or alteration. This would have been a part of the system had it been carried out and completed as the contract called for. This could not be completed by the first load of material or the first day's labor or the second day's labor. The work may have been commenced in the middle of the stream or it may have been commenced at the end of the water pipe. This, however, is immaterial for the purposes of the lien. The test is the contract which they were working on,—the improvement or repair that was made. The liens of the laboring men and the materialmen were not dependent upon the ultimate completion of the contract in connecting up the repair with the original system, but the right

to the lien attached as fast as the labor was performed and the material was furnished, and such lien might fail or be perfected upon complying or failing to comply with the statute. We think the district court correctly held that this was a repair or improvement to the water system, and that the lien attached to the system.

The judgment of the district court is therefore affirmed, with costs in favor of the respondents.

Stewart, C. J., and Sullivan, J., concur.

Petition for rehearing denied.