(No. 4849. June 2, 1928.)

BOISE–PAYETTE LUMBER COMPANY, a Corporation, Appellant and Cross-Respondent, v. CHALLIS INDE-PENDENT SCHOOL DISTRICT No. 1, OF CUSTER COUNTY, IDAHO, a Municipal Corporation, Respond-ent and Cross-Appellant, and IRA E. TAYLOR, De-fendant.

(No. 4850. June 2, 1928.)

NATIONAL PARK LUMBER COMPANY, a Corporation, Appellant and Cross-Respondent, v. CHALLIS INDE-PENDENT SCHOOL DISTRICT No. 1, OF CUSTER COUNTY, IDAHO, a Municipal Corporation, Respond-ent and Cross-Appellant, and IRA E. TAYLOR, De-fendant.

[268 Pac. 26.]

E. W. Whitcomb and F. J. Cowen, for Appellants Boise-Payette Lumber Company and National Park Lumber Co.

Chase A. Clark, for Respondent Challis Independent School District.

TAYLOR, J.—This cause involves appeals by Boise-Payette Lumber Company and National Park Lumber Company, plaintiffs in separate lien foreclosures upon the schoolhouse of the defendant, which appeals have been consolidated, and an appeal by the defendant district in each case.

The defendant district, at a time when it could legally do so, within the constitutional limits of section 3, article 8, by reason of funds on hand and a bond issue and provision for collection of a tax to pay interest and principal thereof, made a contract with the defendant Taylor for the erection of a schoolhouse, the amount of which did not exceed the amount of such authorized funds. After the letting of this contract the district made other contracts which, added to the amount of this one and previous expenditures, exceeded the amount of such funds. Plaintiffs, who furnished materials to Taylor, used in the construction of the building, filed liens for the respective balances claimed of $1,997.74 and $661.25. The district, in the meantime, by payments upon subsequent contracts, had expended all but $430.36 of such funds.

The court granted foreclosure of these liens, limited to the amount of this $430.36 remaining, and apportioned the amount thereof between plaintiffs in proportion to their claims, and disallowed a lien for any further amount or attorney's fees or costs, upon the ground that such allow-

ance would exceed the revenues legally provided for the construction of the schoolhouse, and "be in contravention of section 3, article 8, of the constitution."

Plaintiffs allege error in this, that their liens should have been allowed in full, including attorney's fees and costs, Defendant, as respondent, contests this point, and contends that the Taylor contract is void by reason of the district having, in total contracts, exceeded the constitutional limitation, and in any event that a full allowance of the liens would do so; and, as appellant, alleges error in overruling its general demurrers to the complaints on the grounds of insufficiency to state a cause of action against the district for foreclosure, in that the allowance of a lien upon public school buildings is against public policy, and that C. S., sec. 7340, is void for this reason, and is in violation of section 3, article 8, of the constitution.

The only question necessary for decision is the constitutionality of C. S., sec. 7340, which purports to grant such lien, as follows:

"Every subcontractor, laborer or other person, who performs labor, or furnishes material for any original contractor or subcontractor, to be used in the construction, alteration or repair of any building, machinery or other structure, for any county, city, town or school district, has a lien upon such building, machinery or structure, and all the provisions of this chapter respecting the securing and enforcing of mechanics' liens shall apply thereto, so far as applicable."

Plaintiffs concede that it is the universal rule, in the absence of a specific provision therefor, that general statutes granting mechanics' liens are not construed to include public buildings. Such decisions are based upon the principle that the enforced sale of public buildings thereunder or upon execution is against public policy, in the absence of such specific provision. (*Storey & Fawcett v. Nampa & Meridian Irr. Dist.*, 32 Ida. 713, 187 Pac. 946.) For an extended discussion and citation of authorities, see *Hutchinson v. Krueger*, 34 Okl. 23, Ann. Cas. 1914C, 98, 124 Pac.

591, 41 L. R. A., N. S., 315. See, also, 40 C. J., p. 57, sec. 19; 18 R. C. L., p. 881, sec. 9; and note in 26 A. L. R. 326.

Plaintiffs rely upon C. S., sec. 7340, as such specific declaration of a public policy to make such buildings liable to a lien. Counsel for the defendant cites C. S., sec. 6920, as declarative of a public policy that public buildings are exempt from sale upon execution, except upon a judgment recovered for the price thereof or upon a mortgage thereon.

 The public policy of a state is to be found in its constitution and statutes. (6 R. C. L., "Constitutional Law," p. 108, sec. 108.) No one provision of constitution or statute should be separated from all others, and considered alone; but all provisions bearing on a particular subject should be brought into view; and it is the duty of the court to have recourse to the whole constitution if necessary, to ascertain the true intent and meaning of any particular provision. (Id., p. 47, sec. 41.) In this view, section 4 of article 8 of the constitution must be considered, although not cited by appellants. A statute cannot declare a public policy contrary to the constitution.

We have three constitutional provisions which, in such view, must be considered. Section 3, article 8, provides:

"No . . . . school district . . . . shall incur any indebtedness, or liability in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof . . . ."

Section 6, article 13, provides:

"The legislature shall provide by proper legislation for giving to mechanics, laborers, and material men, an adequate lien on the subject matter of their labor."

Section 4, article 8, provides.

"No county, city, town, township, board of education, or school district, or other subdivision shall lend, or pledge the credit or faith thereof directly or indirectly, in any manner, to, or in aid of any individual, association, or corporation, for any amount or for any purpose whatever, or become responsible for any debt, contract or liability of any individual, association, or corporation in or out of this state."

California has a constitutional provision identical with our section 3, article 8, upon the point here involved. It has likewise another provision similar to, but if anything broader than, our section 6, article 13, that "Mechanics, materialmen, artisans, and laborers of every class *shall have* a lien upon the property upon which they have bestowed labor or furnished material, for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens"; while ours provides that "the legislature *shall provide by proper legislation* for giving . . . . an adequate lien on the subject matter of their labor."

In considering a general enactment providing "that mechanics and materialmen shall have a lien for labor or material used in the construction of any building or other structure," it was there held that neither the constitutional provision for a lien nor the general act could be construed to include public buildings; that to do so would be against public policy; and that such public policy was declared in unmistakable language by the provision similar to our section 3, article 8, saying:

"The public policy appealed to is laid down in the constitution itself. It is a constitutional policy. The section under consideration on its face purports to be a Code provision providing a remedy by individuals against individuals. The constitutional policy referred to but emphasizes the rule of construction which would have been sufficient of itself. And the position is firmly fixed beyond cavil by section 18, article 11, which prohibits school-districts from incurring indebtedness exceeding the annual revenue pro-

vided for it, unless before the indebtedness is incurred provision shall be made for the payment of the debt by taxation. Could there be a plainer declaration that all indebtedness shall be paid from the revenue provided by law?''—*Mayrhofer v. Board of Education,* 89 Cal. 110, 23 Am. St. 451, 26 Pac. 646.

This court has affirmed judgments granting liens under C. S., sec. 7340, but the constitutionality thereof has not been heretofore presented. (*Chamberlain v. City of Lewiston,* 23 Ida. 154, 129 Pac. 1069; *Gem State Lumber Co. v. School District No. 8,* 44 Ida. 359, 256 Pac. 949.)

A search has disclosed no similar law in any other state. Many have provision that the contractor shall furnish a bond for the protection of similar claimants. Others make provision for recourse to the funds held by the municipality or owed to the contractor, but in such cases the remedy has been in the manner of a foreclosure of a lien upon the fund, and the liability of a municipality has been limited to the amount owed to the contractor. (2 Dillon on Municipal Corporations, 5th ed., sec. 831.) The supreme court of Kansas is the only one which has held a general statute as to mechanics' liens to include public buildings, but held even then that the building could not be sold, there being a statute there similar to C. S., sec. 6920, exempting such buildings from sale on execution. (*Wilson v. School District,* 17 Kan. 104; *Board of Commrs. v. Snodgrass & Young Mfg. Co.,* 52 Kan. 253, 34 Pac. 741.)

Many states have constitutional provisions against the loan of credit by a state or a subdivision thereof, and several have provisions against such subdivisions becoming security for debts or liabilities of others. (Stimson on Federal and State Constitutions, p. 282, sec. 345; 2 Dillon on Municipal Corporations, 5th ed., sec. 814.) Colorado has a provision identical in effect with our section 6, article 13, and Georgia one very similar. (*McWilliams v. Smith,* 142 Ga. 209, 82 S. E. 569.) In *Leddy v. People,* 59 Colo. 120, 147 Pac. 365, an act making a county liable for the amount of any school funds loaned therein by the state, was held to violate

this provision. See, also, *American Malleables Co. v. Town of Bloomfield*, 83 N. J. L. 728, 85 Atl. 167.

The district has already incurred the indebtedness contemplated by the constitution by becoming indebted upon the bond issue. While, of course, the contract with Taylor in a measure creates an indebtedness, one hand will wash the other, and the fund provided by the bond issue would pay the amount of the Taylor contract. But if with this, the only indebtedness authorized, the subcontractors or materialmen or laborers may have a lien to be satisfied out of the building, and their claims are not limited by the amount due to Taylor (C. S., sec. 7346), the constitutional limit may easily be exceeded, and the district find itself forced to pay more than the Taylor contract, more than the constitutional limit, or lose the building and grounds upon claims of subcontractors and materialmen and laborers, even though it had paid nothing whatever to Taylor. The point is made more plain, if need be, when we contemplate that a lien for "alteration or repair" might subject an entire building, of a value greatly in excess of the amount of the contract liability therefor, to sale to satisfy a very minor claim, or one even in excess of the constitutional limit of power of the district to contract. The lien of a mortgage with similar dire possibilities has been held to be an indebtedness in excess of such a constitutional limitation, even though not creating a personal obligation of the district. (1 Dillon on Municipal Corporations, 5th ed., sec. 199; *Palmer v. City of Albuquerque*, 19 N. M. 285, 142 Pac. 929, L. R. A. 1915A, 1106; 19 R. C. L., p. 979, n. 1.)

The test of the constitutionality of an act is not what is done thereunder in any particular instance, but what may be done under it. (6 R. C. L., p. 82, sec. 80; 12 C. J., p. 786, sec. 219.) While it is difficult to conceive of reasons to overthrow the reasoning of the Mayrhofer case, or that the infliction of a liability to a lien upon property of a district to pay the debts of a contractor is not the loaning of the credit of the district in violation of section 4, article 8, there is no room for doubt that

making the property of the district liable to a lien for the debt of a contractor or subcontractor to a subcontractor, materialman, or laborer, with whom the district stands in no contract relation, and to whom it is not, by reason of such lien, liable *in personam* (*Kruse v. Wilson*, 3 Cal. App. 91, 84 Pac. 442), is making the district responsible for the "debt, contract or liability of" the contractor. (*Warner v. Willoughby*, 60 Conn. 468, 25 Am. St. 343, 22 Atl. 1014.)

The terms "debt" and "liability" have been interpreted in *Boise Development Co. v. Boise City*, 26 Ida. 347, 143 Pac. 531, and *Feil v. City of Coeur d'Alene*, 23 Ida. 32, 129 Pac. 643. The district could not assume, and the legislature could not inflict, such responsibility or liability. (*Leddy v. People, supra;* 1 McQuillin on Municipal Corporations, sec. 237, p. 537. See, also, *Lord v. City of Denver*, 58 Colo. 1, Ann. Cas. 1916C, 893, 143 Pac. 284, L. R. A. 1915B, 306.) C. S., sec. 7340, is unconstitutional.

The judgments as against the district are reversed and the causes remanded, with instructions to enter judgments in favor of the district. Costs to respondent and cross-appellant, except that no costs be allowed for its brief as cross-appellant, the same not having been filed within the time allowed by rule 43.

Budge and T. Bailey Lee, JJ., concur.

WM. E. LEE, C. J., Dissenting.—The following was prepared as the opinion of the court. It did not receive the approval of a majority, and is filed as a dissenting opinion.

The qualified electors of Independent School District No. 1 of Custer County, at an election therefor, authorized a bond issue in the sum of $45,000 for the construction of a schoolhouse. Funds realized from the bond issue, together with other money available for the same purpose, amounted to $47,858.18. The district acquired a site for $500, paid $250 for building stone and agreed to pay an architect $2,315.85. With $44,792.33 in the treasury, the district entered into a contract with one Taylor to pay

him the sum of $34,275 for the construction of the school-house. At the same time the district made and entered into a contract to pay $8,900 for the installation of a heating plant in the schoolhouse. With the letting of the construction and heating contracts, there remained in the treasury of the district, available for other purposes, approximately $1,617.33. According to the findings, " . . . . thereafter on divers days additional contracts were let in connection with" the building "all of which contracts total an amount approximately $2,200 in excess of" the money available. Taylor failed to pay the Boise-Payette Lumber Company for all materials sold him for the construction of the building, and it filed a claim of lien for $1,997.74. The National Park Lumber Company, having sold Taylor certain materials for the construction of the building, also filed a claim of lien for $661.25, the amount remaining unpaid. In actions by these lumber companies to foreclose their liens, the court made findings of fact and conclusions of law on which it entered judgment directing the foreclosure of the two liens in the sum of $430.36, the amount remaining in the building fund, awarding to each lien claimant the proportion of the $430.36 that its claim bore to the total amount of the two claims. Each of the lumber companies and the district have appealed. This opinion relates to the action of the Boise-Payette Company.

While the constitution (sec. 3, art. 8) prohibited the school district from incurring any indebtedness in excess of the income or revenue provided for such purpose without the assent of its qualified electors, the electors had authorized a bond issue with which to realize money for the construction of this schoolhouse, and the total sum agreed to be paid for the construction and heating of the building was well within the amount of money available for those purposes. The district had not exceeded its powers, and the contract with Taylor was valid. The district, no more than an individual, could thereafter so deplete its building fund as to be relieved from the performance of its contract. The fact that "thereafter on divers days additional con-

tracts were let . . . . ," the obligations of which, added to that of the prior valid contracts, exceeded the amount the district had available for the construction of the schoolhouse, did not render void the prior contracts that were valid when they were made. Surely it is not the law that one, who has a valid contract with a school district, is required, at his peril, to prevent the district from thereafter exceeding its powers, incurring other obligations, allowing its funds to be lost or otherwise depleted. The constitutional limitation is for the observance of the district as well as those with whom it contracts. The district could not, by depleting its funds, relieve itself from complying with its valid obligation. (*Myers v. Independent School Dist.*, 104 Okl. 51, 230 Pac. 498; *Gentis v. Hunt*, 121 Okl. 71, 247 Pac. 358; *Sauer v. School Dist.*, 243 Pa. 294, 90 Atl. 150.) This holding is not in conflict with *Mittry v. Bonneville County*, 38 Ida. 306, 222 Pac. 292, because,. in that case, the obligation of the contract on which the action was instituted, together with that of another contract executed at the same time "and as a part of the same transaction," exceeded the amount of money then in the fund.

It is contended that a public building cannot be sold under execution and that, therefore, a lien cannot attach to and be enforced against a schoolhouse. Without doubt that is the law in most states. It is the general rule that, in the absence of statute, one cannot have a lien on a public building. (*Storey & Fawcett v. Nampa & Meridian Irr. Dist.*, 32 Ida. 713, 187 Pac. 946.) An excellent discussion of this rule and an extended citation of authorities is contained in *Hutchinson v. Krueger*, 34 Okl. 23, Ann. Cas. 1914C, 98, 124 Pac. 591, 41 L. R. A., N. S., 315. See, also, *First National Bank of Idaho v. Malheur County*, 30 Or. 420, 45 Pac. 781, 35 L. R. A. 141; 40 C. J. 957; 18 R. C. L. 881, and note in 26 A. L. R. 329. And the foregoing authorities recognize the rule that a lien may be enforced against a public building where the statute specifically provides therefor. In the absence of a constitutional restriction, the legislature has the power to subject a schoolhouse to execution

sale. In expressly and positively providing for a lien on schoolhouses, and that "all the provisions of this chapter respecting the securing and enforcing of mechanics' liens shall apply thereto, as far as applicable," the legislature established the public policy of the state with respect to the subject. The lien statute is specific and is expressly directed to a particular subject. Even though it be said to conflict with a general statute, under which it is claimed public property cannot be sold, the lien statute was of later enactment, and it must be held to have been the legislative intent that it control and limit the former. (36 Cyc. 1130; 25 R. C. L. 1010, sec. 250; 23 Cal. Jur. 743, sec. 119. See, also, *Heaton v. Panhandle Smelting Co.,* 32 Ida. 146, 179 Pac. 510; *In re Drainage District, No. 3,* 40 Ida. 549, 235 Pac. 895.) As was said by Chief Justice Baldwin, in *National Fireproofing Co. v. Town of Huntington,* 81 Conn. 632, 129 Am. St. 228, 71 Atl. 911, 20 L. R. A., N. S., 261, "The right and the remedy must stand or fall together." It is obvious that a lien on public property is valueless unless the property can be sold to satisfy it. Laborers' and materialmen's liens were allowed on the waterworks of a city in *Chamberlain v. City of Lewiston,* 23 Ida. 154, 129 Pac. 1069. A materialman's lien was allowed on a schoolhouse in *Gem State Lumber Co. v. School Dist. No. 8,* 44 Ida. 359, 256 Pac. 949. In neither of these cases was this question raised. It was held by this court in *Storey v. Nampa & Meridian Irr. Dist., supra,* that a mechanic's lien does not attach to public property unless expressly provided by statute; and that, because the statute does not expressly provide for a lien against the property of an irrigation district, its property is not subject to mechanics' liens. This decision would seem to be authority for holding that a lien may be foreclosed on a schoolhouse.

The trial court concluded "that the allowance of any claim of the plaintiff as against the defendant school district in excess of its proportion of" the sum remaining in the building fund "would exceed the revenues legally provided for the said district for the construction of its school-

house and such excessive allowance would be in contravention of art. 8, sec. 3, of the constitution. . . . . ''

The school district contends that the lien statute, C, S., sec. 7340, which provides that ''Every person, who performs labor, or furnishes material for any original contractor . . . . to be used in the construction . . . . of any building . . . . for any . . . : school district, has a lien upon such building . . . . '' conflicts with this provision of the constitution, which is that ''No . . . . school district . . . . shall incur any indebtedness or liability in any manner, or for any purpose, exceeding in that year. the income and revenue provided for it for such year, without the assent of two thirds of the qualified electors thereof.''

This provision of the constitution prohibits a school district from incurring an indebtedness or liability, for any purpose, in excess of the revenue provided. As a result of the vote of the electors, the district had provided some $47,858.18 to be expended in the construction of a new schoolhouse. For this purpose the district was not prohibited from incurring any indebtedness or liability in the construction of the schoolhouse within that sum. Of the amount then available for building the schoolhouse, the district, by its contract, obligated itself to pay the contractor ''$34,275.00 and the liens were filed for materials furnished to enable the contractor to perform his contract. By operation of the lien statute, those who furnished labor or materials for use in the construction of the building became entitled to liens on the building for the value of their labor and materials. Under the contract, read in the light of the lien statute, the liability of the district to the contractor was to pay him the amount specified in the contract less such sums as were necessary to satisfy liens claimed against the building. As it was necessary for the district to satisfy liens against the building, its liability to the contractor decreased accordingly. (C. S., sec. 7350.) The lien statute operated to give those who furnished labor or materials in the construction of the building security for the payment of such labor or materials, and made such liens preferred and

prior to the obligation of the district to the contractor. And, as decisive of the constitutional question presented, the lien statute does not authorize the imposition of any liability or indebtedness against a school district. On the contrary, it provides that one who furnishes materials for any original contractor for use in the construction of a building " . . . . for any . . . . school district has a lien on such building . . . . " This court said, in *Chamberlain v. City of Lewiston, supra,* a proceeding to foreclose liens against the waterworks of a municipality, that "The lien statute operates *in rem* and not *in personam;* it creates no personal charge against the owner of the property, but rather a charge against the property to the extent of its value."

Since the lien statute, in that case, created no personal charge against the city of Lewiston, in this case, it cannot operate to impose any "liability or indebtedness" against the school district, and is, therefore, not in conflict with article 8, section 3 of the constitution. The constitutional provision is directed against the incurring of an indebtedness or liability; it has neither deprived the legislature of the power to provide for such a lien on a schoolhouse nor to authorize the sale of the building for its satisfaction. It may be inadvisable to provide for the imposition of liens on such public buildings, but that is a legislative question.

It is contended that the court erred in not foreclosing the lien for the full amount of the claim. The trial court should have found the amount in which appellant was entitled to a lien. In view of the assignments, it is not improper to observe that in such a case the burden is on a lien claimant to show that the materials, for which the lien is claimed, were used in the construction of the building, for a lien claimant is not entitled to a lien for any materials not so used. (40 C. J. 457, sec. 644.) While it has been held that a materialman has a lien for such materials as scaffolding, which "does not actually go into the building, but which may practically be used and consumed and destroyed in the course of the work," (*Chamberlain v.*

*City of Lewiston, supra*), the lumber company was not entitled to a lien against the schoolhouse for materials furnished the contractor and used in the construction or repair of other buildings.

Judgment of foreclosure should be entered in favor of the lumber company and against the school district in the amount the lumber company was actually entitled to recover in that proceeding without regard to the amount then in the treasury of the district. It was also entitled to its costs. (C. S., sec. 7352.)

The foregoing applies also to the case of National Park Lumber Company against the school district.

I am authorized to say that Mr. Justice Givens concurs with the views I have expressed.