## DOYLE-KIDD DRY GOODS CO. v. INGRAM.

No. 15504—Opinion Filed Feb. 3, 1925.

Rehearing Denied March 17, 1925.

1. Contracts — Action for Damages. for Breach—Burden of Proof.

Where suit is brought for damages because of the breach of an alleged oral contract, it is incumbent upon the plaintiff, to entitle him to recover, to show (1) that the alleged agreement was made; and (2) that such agreement was a valid, binding, enforceable agreement under the law.

2. Sales — Agreement to Deliver Goods at Auction. Price Paid—Measure of Damage for Breach.

Where suit is brought for damages because of the alleged failure of the defendant to perform its agreement to the effect, that, if defendant shall acquire title to goods and accounts offered for sale at public auction, to turn such goods and accounts over to plaintiff at the price for which they were bought in at the sale, the measure of the plaintiff's damages is the difference, if any, between the price at which the goods and accounts were bid off, and what it would have cost the plaintiff in the nearest market near about the time the goods and accounts should have been turned over to him, to buy goods and accounts of like kind, or, in other words, the cash value of such goods and accounts in the nearest market at about the time the goods and accounts should have been turned over to the plaintiff.

3. Same—Erroneous Instruction.

Where, in such a case, the court in its instructions tells the jury that the plaintiff's damages, if any, are measured by what the plaintiff "would have made, if defendant had performed its contract", the instruction is erroneous, and does not submit the proper measure of damages, and will work a reversal of the judgment for plaintiff for damages, based upon the verdict returned.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Muskogee County; Enloe V. Vernor, Judge.

Action by A. T. Ingram against Doyle-Kidd Dry Goods Company, a corporation. Judgment for plaintiff, and defendant appeals. Reversed.

Poe & Poe and Archibald Bonds, for plaintiff in error.

Neff & Neff and Harry G. Davis, for defendant in error.

Opinion by SHACKELFORD, C. The plaintiff in error was the defendant below, and the defendant in error was the plaintiff. The parties will be designated herein as plaintiff and defendant as they appeared in the trial court.

The plaintiff brought his action against the defendant in the district court of Muskogee county for damages alleged to have been sustained by him by reason of the alleged breach of a contract. He alleges in his petition:

"That in the year 1921, the defendant agreed, for a valuable consideration to purchase a stock of goods and accounts formerly owned by the Ingram Trading Company for the plaintiff and after so purchasing said goods to turn them over to the plaintiff for the amount paid; that the defendant purchased said goods and then proceeded, in violation of its contract, to sell the same to

parties other than the plaintiff; that the defendant made thereby a profit of $1,500; that said goods and accounts were worth more than $3,000 more than the defendant paid for the same and that plaintiff lost by reason of the defendant's breach of said contract a sum in excess of $2,990."

The defendant moved for a more definite and certain statement in the following particulars: (1) The date of the contract. (2) Whether or not the contract was in writing, and if in writing to attach a copy of the contract. (3) If not in writing, to state what the valuable consideration consisted of, and whether or not there was performance or part performance of the contract. (4) To state whether or not 'the plaintiff was willing, ready, and able at all times to perform his part of the contract. An order was made sustaining the motion, and the plaintiff thereafter filed an amended petition on which the cause was tried. In the amended petition and in response to the motion to make more definite and certain, the plaintiff alleged that the contract was made in January and February, 1921; that it was an oral contract made between the plaintiff and the managing officers of the defendant corporation; that the agreement was that the defendant should buy at the bankruptcy sale a certain stock of goods, wares, and merchandise formerly belonging to the Ingram Trading Company, and turn the stock over to plaintiff at the purchase price; that there was part performance of the contract in that the defendant bought the stock of goods at the bankruptcy sale; and that the agreement was confirmed in a letter, a copy of which is attached, and which letter reads as follows:

"Little Rock, Ark.,
"March 19, 1921.

"Mr. A. T. Ingram.

"Porum, Okla.

"Dear Sir:

"I have your letter of the 17th inst., and will have some one present at the sale. We will take care of the situation as has been outlined to you personally.

"With best wishes, I am
.'"Your friend,
"Doyle-Kidd Dry Goods Co.
"J. P Blanks,
"Jpb-m.          "Vice-President. "

That the goods were to be paid for in installments under the agreement, and the plaintiff was ready, willing, and able to perform his part of the contract. Otherwise the amended petition is substantially to the same effect as the original petition, except that it alleges that because of the agreement

plaintiff did not bid for the stock of goods and accounts at the bankruptcy sale.

The cause was tried to a jury, resulting in a verdict for plaintiff in the sum of $2,990, on which judgment was rendered. The defendant prosecutes appeal and presents several assignments of err. r, chief of which are to the effect that:

(1) There was not sufficient evidence adduced by plaintiff to sustain the verdict and judgment for damages.

(2) That the court did not submit to the jury the proper rule by which to measure the plaintiff's damages, if any sustained.

At the close of the plaintiff's evidence the defendant demurred to the evidence on the ground that plaintiff's evidence was insufficient to prove a cause of action in favor of plaintiff and against the defendant. The demurrer was overruled. At the close of all the evidence the defendant requested the court to direct the jury to return a verdict for defendant. The request was denied.

The plaintiff's evidence tended to show that he was the principal owner and general business manager of the Ingram Trading Company, doing business in the town of Porum, Okla., which company was a credit customer of the defendant and had become indebted to the defendant in the sum of about $7,500, and was indebted to other wholesalers, and early in the year 1921 was in a failing condition and unable to meet its bills. An involuntary bankruptcy proceeding was instituted against the Ingram Trading Company which finally resulted in a sale of the stock of goods and the accounts of the said company. During the pendency of the bankruptcy proceedings, the plaintiff had considerable correspondence and negotiations with the defendant, who, it seems, was one of the heavy creditors. He claims that he made an agreement with Mr. Blanks, who seems to have been business manager for the defendant, in which it was agreed that the defendant should buy the stock of goods and accounts at the bankruptcy sale, and sell them back to plaintiff for the price at which the said property should be bid off, plus 8 per cent. until the amount was paid. Mr. Ingram's testimony as to the terms of the agreement is as follows:

"He said he would tell me how he handled such cases and did go ahead and show how he did it—said he had fifty-six stores at that time—general stores and he handled them all in this same manner—he said to let this go into bankruptcy and not fight the case and Doyle-Kidd Dry Goods Company would come over and buy the advertised goods and accounts in and retain ownership.

However they would let me work with a man to represent them and me my equity in the business at a salary of $150.00 per month each, and when this man and myself had paid the Doyle-Kidd Dry Goods Company the amount I then owed plus the net amount they paid for the stock, and 8 per cent. agreed interest, they would resell to me as if nothing had happened, and on that theory and agreement and with that understanding, I let Mr. Poe come and file this bankruptcy suit, but he found this involuntary petition already filed so instead of filing the list of creditors Mr. Blanks met Mr. Poe and told him to go ahead and file it later, and the day before he filed that I met Mr. Poe in Little Rock and had a long talk with him."

This conversation was sometime in February, 1921, and in this statement is the oral agreement relied upon. The plaintiff offered in evidence a letter from Mr. Blanks which he insists confirmed this agreement. The letter introduced in evidence is the letter above quoted in the statement of the pleadings. This letter was in answer to one written by Ingram, dated March 17, 1921, as follows:

"Ingram Trading Co.

"Porum, Oklahoma.

"3-17-1921.

"Mr. Blanks—

"Little Rock, Ark.

"Dear Sir—

"Beg to say that I was in Muskogee Monday and Tuesday last—found the receiver in our case letting matters drag along—However I succeeded in getting same published Tuesday the 15th—the sale will be Friday the 25th & the creditors' meeting will be Sat. the 26th at 1:30 p. m. & will be held in the Barnes Bldg. at Muskogee. I told Mr. Poe that I would advise you or himself of above dates as soon as I could be sure as to the correct time am notifying you as I know he is out of the city a great deal and that you know at all times where to find him— (Mr. Poe) Don't know of course which of you may come over at that time—However, Mr. Poe intimated that probably he would.

"I had renewed quite a number of my customers' notes prior to the date of filing answer in this case & have found it necessary to advance them small sums each week for groc. & etc. I had a small amount of money in bank at that time & have been giving them orders to the merchants here in town from time to time as necessity demands & giving my check to cover same out of the fund above mentioned—This I think will meet with your approval when more fully explained to you or Mr. Poe personally—I am pacifying the farmers who are the firmer & who are expecting to farm in the usual way as best I can & at present have them all going along fine and in good spirits. This I know is the only plausible thing to do at present."

"Yours respt.,

"(Signed)   A. T. Ingram."

By way of part performance of the oral agreement it was shown that the representative of the Doyle-Kidd Dry Goods Company appeared at the bankruptcy sale and bought the stock of goods formerly controlled by the Ingram Trading Company. The stock of goods was bid off by the defendant for $5,700, and the accounts were bought by the defendant for $250, and afterwards the goods were sold a Mr. Vinsant. Upon the important matter of the value of the stock of merchandise, the testimony offered by the plaintiff tends to show that the total cost of the goods was approximately $17,000, and would have retailed for more than that amount; that the receiver's inventory of the goods amounted to $14,213.75; and one witness believed that the stock would work out about $15,000; that the face value of the accounts was approximately $18,000, and that the length of time it would have taken to collect them would depend upon how crops should turn out; that neither the stock of goods nor the accounts were turned over to the plaintiff. There seems to be no direct proof in the record as to the value of the stock of goods or the accounts at the place and about the time they should have been turned over to plaintiff; also there seems to be no proof in support of plaintiff's allegation that he at all times was ready, willing, and able to carry out his part of the alleged agreement. He testified that he did not bid at the sale because of the agreement made with defendant that the goods and accounts were to be sold back to him; and that other prospective bidders did not bid upon the stock of goods and accounts because he advised them he was to be taken care of. There seems to be no proof in the record that plaintiff would have been able to take care of a bid had he made it, or that the defendant's agents did anything or said anything to anybody to discourage competitive bidding.

The question arising here is, Does such testimony reasonably support the verdict and judgment entered thereon? In the first place, the burden was upon the plaintiff to prove by a preponderance of the evidence that an enforceable contract was made between the plaintiff and defendant, which was breached by defendant, entitling plaintiff to damages. Does the evidence tend to show that an enforceable contract was made? If there was a contract made, it, in short, amounted to this: The defendant agreed with the plaintiff that if the defendant should acquire title

to the stock of goods and accounts, formerly belonging to the Ingram Trading Company, at the bankruptcy sale, then defendant would resell the stock and accounts to plaintiff upon terms indicated by the plaintiff. It is alleged that the contract was oral, and it is insisted by plaintiff that the value of the stock of goods and accounts amounted to several thousand dollars. The contract being oral, and the amount involved being in excess of $50, under section 5034, Comp. Stat. 1921, there must have been part performance of the contract to make it enforceable. Until some part of the consideration was paid, or until some part of the property was delivered, the contract was unenforceable and invalid under the statute. There is an entire failure to show that any part of the consideration was at any time paid. There is no contention made that any part of the property was turned over by defendant and received by the plaintiff. The plaintiff contends, however, that the fact that the defendant bought the property in at the bankruptcy sale constituted a part performance of the agreement. The sale was being made as a part of the bankruptcy proceedings and for the benefit of the creditors of the bankrupt, and was not a matter in the control of either the plaintiff or the defendant. The plaintiff contends that he advised some of the prospective bidders at the sale that he was to be taken care of, and this had a tendency to prevent competitive bidding; but it does not appear that the defendant was a party to any agreement that this should be done. Any such arrangement or understanding might easily have amounted to a fraud upon the creditors of the bankrupt, and is not looked upon with favor by the courts. The contention that the defendant's bid at the bankruptcy sale amounted to a part performance of the oral agreement between the plaintiff and defendant cannot be maintained; nor can the fact that the stock of goods and the bunch of accounts were knocked off to the defendant upon its bid, amount to any such part performance.

The plaintiff contends that the letter of the defendant dated March 19, 1921 in response to plaintiff's letter of March 17, 1921, amounted to a written confirmation of the oral agreement. Both letters are above quoted. The letter of the 19th of March, 1921, makes no reference to any oral agreement such as the plaintiff alleges or testifies about, nor does it refer to any other writing embodying any such agreement as the plaintiff contends was made. Under the rule laid down by this court in King Collie Co. v. Richards, 76 Okla. 6, 184 Pac. 130, the letter relied upon and the letter to which ref-

erence is made therein are insufficient as a memorandum of the agreement to take the matter out of the statute of frauds. In that case the court said:

"In order to render an oral contract falling within the scope of the statute of frauds enforceable by action, the memorandum thereof must state the contract with such certainty that its essentials can be known from the memorandum itself, or by a reference contained in it to some other writing, without recourse to parol proof to supply them."

This letter itself falls far short of being written confirmation of the oral contract plaintiff contends was made.

The plaintiff now contends here that the contract was not, in fact, an agreement for the sale and purchase of the stock of goods and accounts, but the effect of the oral negotiations was to create a trust agreement between the plaintiff and defendant so that when the defendant bought the stock of goods and accounts, defendant acquired the title as trustee for the benefit of the plaintiff; and that for such reason the statute of frauds has no application whatever. The plaintiff cites many cases to the effect that where an agreement has been entered into between a debtor and his creditor, by which the creditor agreed to buy in the property of the failing debtor for the debtor's benefit, and by reason of the agreement and the conduct of the creditor competitive bidding was chilled and the property bid in at a sacrifice price, that a trust relation will have been brought about between the debtor and creditor which the courts will recognize and enforce as a constructive trust, regardless of whether the agreement was in writing or any consideration paid. The theory advanced in this line of cases is that such a situation has been brought about that would amount to a fraud upon the debtor to permit the creditor to take advantage of the condition which has arisen by reason of his conduct and agreement. It seems to us that the plaintiff has not brought himself within the rule in these cases either by pleading or proof. The plaintiff's suit is an action at law for damages for the breach of a contract. It is true that he alleges that by reason of the alleged agreement he did not bid at the bankruptcy sale upon the stock of goods or accounts. It is not alleged or proven, that he was in a financial situation to have taken care of a bid had he made it. He does not allege or prove that it was a part or parcel of the agreement that he should not bid upon the stock of goods or accounts. He neither alleged nor proved any conduct upon the part of the defendant which could in any manner

be construed as having the effect of destroying competitive bidding. He testified that no agreement was made with the defendant by which he was not to bid at the sale; and never told the agents of the defendant that he would not bid at the sale. His testimony is to the effect that he did not bid at the sale because he wanted the goods to sell at as high a price as possible, and wanted his creditors to get as high a percentage on what he owed them as possible. He said it never crossed his mind to enter into an agreement with the defendant by which he was not to bid.

It seems to us that the evidence offered on the part of the plaintiff was entirely insufficient to establish a part performance of the alleged contract such as would take the oral agreement out of the statute of frauds; and altogether insufficient to establish a trust relation between the plaintiff and defendant, or require the court to hold that such trust relation had arisen such as would be a fraud upon the plaintiff to permit the defendant to violate and to hold that the statute of frauds is inapplicable.

The defendant complains that even if the evidence offered by the plaintiff was sufficient from which the jury might infer that the goods and accounts were of a greater value than the price at which they were bought in by the defendant, and that plaintiff's evidence upon the question of part performance was sufficient to take the oral agreement out of the statute of frauds, that the court did not submit to the jury in the instructions a true rule by which the jury could measure the plaintiff's damages. We have carefully examined the instructions given to the jury by the court. The court's instruction number three submitted to the jury the measure of the plaintiff's damages, if any. It is as follows:

"You are instructed that if you find that the plaintiff is entitled to a verdict, then in assessing the amount of his recovery you should allow him such amount as the evidence shows with reasonable certainty he would have made if defendant had performed its contract, if you find a contract was made, and had allowed him to handle the goods and accounts in the manner provided by said contract, but plaintiff's recovery cannot exceed $2,990 even though you find his damages exceeded that amount."

Our own statute fixes the measure of damages. Section 5976, Comp. Stat. 1921, is as follows:

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin."

Section 6009, Comp. Stat. 1921, is as follows:

"In estimating damages, except as provided by the two following sections, the value of property to a buyer or owner thereof, deprived of its possession, is deemed to be the price at which he might have bought an equivalent thing, in the market nearest to the place where the property ought to have been put into his possession and at such time after the breach of duty upon which his right to damages is founded as would suffice with reasonable diligence, for him to make such a purchase."

The plaintiff's claim for damages is the difference in the price between what the defendant bought the goods and accounts for, and their actual value. The true rule, under the statute, seems to be that the plaintiff's damages would be the difference between what was paid for the stock of goods and accounts and what it would have cost plaintiff to buy equivalent goods and accounts in the market nearest to the place when and where the property ought to have been put into plaintiff's possession. In other words, plaintiff's damages should be measured by the difference between what the goods would cost under the agreement, and the actual cash value, or what it would have cost to buy goods and accounts of like kind in the nearest market at a reasonable time following the breach of the agreement. The instruction given might mean something very different. The instruction tells the jury that plaintiff's damages, if any, are measured by what he would have made if the contract had been carried out. This is erroneous, and under the proof submitted might have become very misleading to the jury. The plaintiff in his evidence placed stress upon the agreement which he testified the defendant had made, that he should work in the store at $150 per month, and that it would probably have taken two years or more to have worked the matter out; but that, because of defendant's breach of the agreement he had been entirely out of business. The jury might easily have confused what plaintiff would have received in salary as money to be made, when as a matter of fact plaintiff did not sue for loss of salary. We think the jury should have been instructed that plaintiff's damages, if any, would be the difference between the amount at which defendant bid off the goods and accounts,

and the cash or market value of goods and accounts of like kind at the nearest market at about the time the stuff should have been delivered into the plaintiff's possession.

We think the court erred in overruling defendant's demurrer to plaintiff's evidence; and erred in refusing to direct a verdict for the defendant at the close of all the evidence as was requested by the defendant. Even if the plaintiff had made a case to go to the jury, the court's instruction upon the measure of damages, and to which the defendant excepted, was so erroneous and misleading as to require a reversal of the judgment.

We recommend that the judgment of the trial court be reversed and the cause remanded for a new trial.

By the Court: It is so ordered.

Note.—See under (1) 13 C. J. pp. 757, 760; (2) 35 Cyc. p. 633; (3) 35 Cyc. p. 644.