(March 25, 1922.)

F. O. McGILL, Doing Business Under the Firm Name and Style of McGILL CONSTRUCTION CO., Appellant, v. WILLIAM G. McADOO, Director General of Railroads, Respondent.

[206 Pac. 1057.]

MECHANIC'S LIEN—AGAINST PROPERTY OF RAILROAD COMPANY—FEDERAL CONTROL ACT — PRESERVES RIGHTS AND REMEDIES AGAINST CARRIERS—DIRECTOR GENERAL—PROPER PARTY DEFENDANT.

1. Where the authorized agents of a railroad company instruct a mechanic to repair damages done to a depot building belonging to the company, done by a third person, such building will be

liable to a mechanic's lien for the value of the labor done and material furnished, unless such agents notify such mechanic in advance of his doing the work that he must look to the third party for his compensation.

2. The purpose of the Federal Control Act of March 21, 1918, c. 25 (40 Stat. L. 451) was to preserve to the general public the rights and remedies against common carriers which it enjoyed at the time the railroads were taken over by the President, except in so far as this might interfere with the needs of federal operation, and applies to causes against carriers either at law or in equity, and General Order No. 50 requires that such actions be against the Director General by name.

APPEAL from the District Court of the Seventh Judicial District, for Canyon County. Hon. Ed. L. Bryan, Judge.

Action to foreclose a mechanic's lien. Judgment for defendant, and plaintiff appeals. *Reversed* and *remanded.*

G. W. Lamson, for Appellant.

Every person performing labor or furnishing material for a building or structure is entitled to a lien therefor, and the amount to be recovered under such lien is always measured by the amount found to be due him under his contract. (*Steltz v. Armory Co.*, 15 Ida. 551, 99 Pac. 98, 20 L. R. A., N. S., 872.) Without reference to whether such person performing such labor or furnishing such material is an original contractor or a subcontractor or a laborer or a materialman. (*Hill v. Twin Falls Salmon River Land & Water Co.*, 22 Ida. 274, 125 Pac. 204.)

A lien may be sustained upon property for labor and material expended thereon without the express or implied consent of the owner where the owner derives a benefit or advantage from the labor or material for which the lien is given. (*Van Stone v. Stillwell & B. Mfg. Co.*, 142 U. S. 128, 12 Sup. Ct. 181, 35 L. ed. 961; *Jones v. Great Southern*

Publisher's Note.

2. Federal control of railroads and other utilities, see notes in 4 A. L. R. 1680; 8 A. L. R. 969; 10 A. L. R. 956; 11 A. L. R. 1450; 14 A. L. R. 234.

*Fire Proof Hotel Co.,* 86 Fed. 370, 30 C. C. A. 108; *Perrault v. Shaw,* 69 N. H. 180, 76 Am. St. 160, 38 Atl. 724; *Mallory v. La Crosse Abattoir Co.,* 80 Wis. 170, 49 N. W. 1071; 27 Cyc. 72.)

H. B. Thompson and John O. Moran, for Respondent.

For the purpose of establishing either an implied or an express contract there must have been a meeting of minds between appellant and respondent.    (6 R. C. L. 587.)

LEE J.—This is an action by appellant F. O. McGill, doing business as the McGill Construction Company, to foreclose a mechanic's lien upon the station building and premises at Nampa belonging to the Oregon Short Line Railroad System, for repairs made while the same was under the control of William G. McAdoo, Director General of Railroads.

The case was tried without the intervention of a jury, and at the close of appellant's case respondent moved for nonsuit, which was denied.  At the close of the trial the court made and entered its separate findings and conclusions and decree thereon, to the effect that appellant take nothing by reason of his complaint and that respondent recover costs. Thereafter a motion was made for a new trial and denied, from which order this appeal is taken.

The record presents two questions for determination: (1) The right of appellant to enforce a mechanic's lien against the property of the Oregon Short Line Railroad Company for the repairs made upon its passenger depot at Nampa, Idaho; (2) The right of appellant to maintain this action against William G. McAdoo, Director General of Railroads.

The facts, in so far as they are material, are as follows: About August 21, 1918, an automobile belonging to one Frank Noble was carelessly driven over the street curbing into the window of said passenger depot at Nampa, breaking in the window and the adjacent brick wall on the southerly side of the building, fronting the main thoroughfare approaching said building.  After conferences with the local

trainmaster and other employees of the railroad company, then in the service of the Director General, appellant submitted a bid in writing to furnish the material and labor to repair this building. The proposal was referred by W. T. Ennis, the trainmaster, to his superior, J. B. Stevenson, superintendent of the Idaho division, at Pocatello. Some days later the appellant was informed that his proposal was accepted, the work to be done under the direct supervision of the Bridge and Building Department foreman. The work was accordingly completed and approved by said foreman, and a statement was rendered for the same in November following, which was forwarded to the division superintendent, who returned the same to appellant December 5, 1918, making no objection to the quality of the work performed or the material furnished, or to the price charged therefor, but stating that as the bill was incurred at the direction and request of Mr. Noble and not at the request of the Oregon Short Line Company, appellant should look to Mr. Noble for his pay. Thereafter on the sixteenth day of December appellant prepared and filed a mechanic's lien against the said depot building, claiming for such material furnished and labor performed the sum of $520. Suit was thereafter commenced to foreclose such lien, the Oregon Short Line Railroad Company first being made defendant, but the complaint was subsequently amended making William G. McAdoo, Director General of Railroads, defendant.

The complaint, in addition to the usual allegations for the foreclosure of a mechanic's lien, *inter alia* alleges that the defendant, as the Director General of Railroads, has under his control on behalf of the United States the Oregon Short Line Railroad System; that said company is a corporation organized and existing under the laws of the state of Utah, and maintains and operates a line of railroad between Utah and Idaho, and elsewhere; and that at the time of the commencement of this action it had been included in the President's proclamation placing the same under federal control.

The answer admits the corporate existence of the railroad company and the taking over of its system by the Director General, but denies that General Order No. 50 prohibits the institution of suits or the rendering of judgments against railroad corporations arising out of matters of the nature described in the complaint, or that the appellant and the operating officials of said system entered into an agreement whereby appellant was to furnish material and perform labor for the repair of said building. It admits that appellant made the repairs in question, and that he has not been paid for the same, and alleges that whatever services were performed by appellant were on account of an agreement between himself and the said Frank Noble, who contracted and agreed to pay the appellant therefor.

C. S., sec. 7339, provides that:

"Every person performing labor upon, or furnishing material to be used in the construction, alteration or repair of any . . . . building . . . . railroad . . . . has a lien upon the same for the work or labor done or material furnished, whether done or furnished at the instance of the owner of the building . . . . or his agent; and every contractor, subcontractor, architect, builder or any person having charge of . . . . the construction, alteration or repair, either in whole or in part, of any building or other improvement, as aforesaid, shall be held to be the agent of the owner for the purposes of this chapter."

It was the intent of the mechanic's lien law to grant an absolute lien upon the property, to persons who perform labor or furnish material to be used in building or improving such structure; and every contractor, subcontractor, architect, builder or other person having charge of such building or of its alteration or repair shall be held to be the agent of the owner for the purposes of this lien law. (*Hill v. Twin Falls etc. Water Co.*, 22 Ida. 274, 125 Pac. 204.)

The purpose of the statute is to compensate a man who performs labor upon or furnishes material to be used in the construction, alteration or repair of a building or struc-

ture. (*Chamberlain v. City of Lewiston,* 23 Ida. 154, 129 Pac. 1069.)

It is not sufficient to relieve the property of this company from the operation of the mechanic's lien law for the employees or managing agents of the railroad company to say that they understood that appellant should look to the party who had done the damage to the depot building for his compensation for making such repairs. When they authorized him to proceed with this work without an agreement on his part that he would look for his compensation solely to the person who had caused the injury, they thereby subjected the building to a lien for the reasonable value of such labor and material so furnished. There being no question about its value, appellant's right to recover cannot be denied, unless bringing his action against the Director General precludes his right of recovery.

The President took control of this railroad on December 28, 1917, pursuant to the proclamation of December 26, 1917 (40 Stats. L. 1733), under the act of August 29, 1916, c. 418 (39 Stat. L. 619, 645; U. S. Comp. Stats., sec. 1974a; Fed. Stats. Ann., 2d ed., p. 1095). He was operating it through the Director General under the Federal Control Act (March 21, 1918, c. 25, 40 Stat. L. 451; U. S. Comp. Stats. 3115¾a; Fed. Stats. Ann., Supp. 1918, p. 757), when appellant was employed to furnish this material and make this repair. The railroad administration established by the President in December, 1917, did not exercise its control through the supervision of the owner companies, but by means of the Director General, through "one control, one administration, one power for the accomplishment of the one purpose, the complete possession by governmental authority, to replace, for the period provided, the private ownership theretofore existing." (*Northern Pac. R. Co. v. North Dakota,* 250 U. S. 135, 39 Sup. Ct. 502, 63 L. ed. 897, P. U. R. 1919D, p. 705.)

This authority was confirmed by the Federal Control Act of March 21, 1918, c. 25 (40 Stat. L. 451), and the ensuing proclamation of March 29, 1918 (40 Stat. L. 1763). By the

establishment of the Railroad Administration and the subsequent orders of the Director General, the carrier companies were completely severed from the control and management of their systems. Managing officials were "required to sever their relations with the particular companies and to become exclusive members of the United States Railroad Administration." (U. S. R. R. Adm. Bulletin, No. 4, pp. 113, 114, 313.) The railway employees were under this direction, and were in no way controlled by their former employers.

Sec. 10 of the Federal Control Act provides:

"That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or Federal laws, or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such Federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers, and judgment entered as now provided by law; and in any action at law or suit in equity against the carrier no defense shall be made thereto upon the ground that the carrier is an instrumentality of the Federal government. . . . . But no process, mesne or final, shall be levied against any property under such Federal control."

"The plain purpose of the above provision was to preserve to the general public the rights and remedies against common carriers which it enjoyed at the time the railroads were taken over by the President, except in so far as such rights and remedies might interfere with the needs of Federal operation . . . . and applies to cases against the carrier companies . . . . where both cause of action and suit had arisen . . . . during Federal operation. The government was to operate the carriers, but the usual immunity of the sovereign from legal liability was not to prevent the enforcement of liabilities ordinarily incident to the operation of carriers. The situation was analogous to that which, would exist if there were a general receivership of each transportation system."

"All doubt as to how suit should be brought was cleared away by General Order No. 50, which required that it would be against the Director General by name." (*Missouri Pac. R. Co. and Hines, Director General, etc., v. Ault,* 256 U. S. 554, 41 Sup. Ct. 593, 65 L. ed. 647.)

The cause is reversed and remanded, with instructions to proceed in accordance with the views herein expressed. Costs awarded to appellant.

Rice, C. J., and Budge, J., concur.