## EASON OIL CO. v. M. A. SWATEK & CO. et al.

No. 23567.     Oct. 9, 1934.

Simons, McKnight, Simons, Mitchell & McKnight, for plaintiff in error.

G. A. Paul, Shirk, Danner & Phelps, and Charles E. Earnheart, for defendants in error M. A. Swatek & Company, Overhead Door Company, J. B. Klein Iron & Foundry Company, Standard Roofing & Material Company.

Willingham & Fariss and C. E. McAfee, for defendant in error R. E. Ernest, a sole trader doing business as R. E. Ernest & Company, and William McCaig.

O. A. Cargill and Walter Graalman, for defendant in error A. R. Griffith, a sole trader doing business as Griffith Electric Company.

Conner & Conner, for defendants in error E. E. Barbee, trustee of Blockie Furnace & Supply Co.

WELCH, J. Plaintiff in error, Eason Oil Company, a corporation, prosecutes this appeal from the district court of Oklahoma county against the defendants in error, M. A. Swatek & Company, a corporation, Overhead Door Company, a corporation, J. B. Klein Iron & Foundry Company, a corporation, Standard Roofing & Material Company, a corporation, A. R. Griffith, doing business as Griffith Electric Company, E. E. Barbee, trustee of the Blockie Furnace & Supply Company, a corporation, R. E. Ernest doing business as R. E. Ernest & Company, and William McCaig.

The action was commenced in the district court by M. A. Swatek & Company, a corporation as plaintiff against the Eason Oil Company, a corporation, and Harry Reynolds Construction Company, as defendants. The other defendants in error became parties in the trial court by filing their several and separate petitions in intervention. The plaintiff and all of the interveners sought and obtained in the trial court judgment against plaintiff in error, establishing their separate claims and liens as materialmen against plaintiff in error's property. For convenience the defendants in error will be referred to as plaintiffs, and the plaintiff in error will be referred to as defendant.

On or about January 11, 1931, the Reynolds Construction Company, as contractor, completed a filling station in Oklahoma City for the defendant. Immediately the contractor procured of the plaintiffs, who had furnished labor and material in the construction of the filling station, the following lien waiver:

"State of Oklahoma, County of Oklahoma, ss.

"To Whom it May Concern:

"For and in consideration of One Dollar and other good and valuable considerations, the receipt of which is hereby acknowledged, the undersigned does hereby waive and release any lien, or right of lien which it has on the building or premises, of, or known as lots No. 39 & 40, block No. 10 Stockyards Addition to Oklahoma City, Oklahoma, on account of labor or materials furnished for same for the account of the Harry Reynolds Construction Company, 636-East 7th, Oklahoma City, Oklahoma.

"(Signed) Harry Hayes _____$125.00

"V. R. Hinkle

"Capitol Hill Plumbing _____ 285.00

"S. Frank Hill
"Overhead Door Company ____ 265.00
"A. R. Griffith
"Griffith Electric Co. _____ 200.00
"J. S. Corley, Sec.
"M. A. Swatek Co. _____ 524.58
"F. H. Kowe
"Blockie Furnace Co. _____ 275.00
"Carl L. Pallady
"J. B. Klein Iron Co. _____ 146.28
"R. E. Ernest, Mgr. Oklahoma City
"Arkala Sash & Door Co. ____ 185.00
"Wm. McCaig _____ 80.00
"W. S. Brown, Mgr.
"Standard Roofing & Mat. Co.__ 112.17
"By J. M. Coleman
"Standard Roofing & Mat. Co.__ 101.89"

This instrument was properly acknowledged before a notary public, by the persons executing the same.

The contractor, upon procuring plaintiffs' signatures to this waiver, delivered to each of them, respectively, his check for the amount due as shown by the waivers. Checks so given were returned to plaintiffs by the payor bank marked "no account." Upon return of these unpaid checks the plaintiffs complained to one Chas. H. Biggs, the defendant's managing agent of filling stations in Oklahoma City, advising Mr. Biggs that their checks and claims were unpaid, and inquiring of him what action the defendant would take in the matter. Mr. Biggs informed them that he would take it up with the Eason Oil Company and advise them further. Mr. Biggs later informed the plaintiffs that the Eason Oil Company would look into the matter before final settlement with the contractor, and on the day before the contractor received a check in final settlement Mr. Biggs advised plaintiffs that the Eason Oil Company was not paying the money to the contractor direct, and that it was going to take care of their individual claims.

On April 22, 1931, the contractor, Mr. Reynolds, appeared at the home office of the defendant in Enid, for the purpose of obtaining final payment of the balance of the contract price for construction of the building. Prior to that time Mr. Biggs had telephoned the secretary of the defendant corporation, A. C. Hatton, advising him that some of the materialmen and lien claimants had not been paid, and that their checks received from the contractor had been returned unpaid. The contractor on this occasion dealt with Mr. Hatton. Mr. Hatton sought the advice of his attorney, Mr. Simons. Mr. Hatton's testimony in this regard is in part as follows:

"A. Mr. Biggs called me and told me some of the fellows that had been subcontractors for Reynolds had complained that their checks had not been honored for payment. * * *

"A. Mr. Simons examined the contract that we had with Reynolds. I told him that Reynolds had said that he had complied with his part of the contract and expected us to do the same and Mr. Simons advised me to go ahead and give him the check and as I told you a while ago, I told Mr. Simons that I understood some of the fellows had complained that the checks had not been honored for payment and he advised me to send the check down to Mr. Biggs and suggested that he go with Reynolds and get the matter straightened up."

Hatton did not deliver the check to the contractor, but on the same day sent the check payable to the order of the contractor to the defendant's agent, Mr. Biggs, in Oklahoma City. Mr. Hatton testified further as follows:

"Q. Was it or wasn't it your idea to see that whatever checks had been previously issued should be taken up by Mr. Biggs out of the check that you sent to Mr. Biggs payable to the Reynolds Construction Company? A. It was."

And in pursuance of his intention he transmitted the following letter to defendant's Oklahoma City agent:

April 22nd, 1931

"Mr. Charles H. Biggs,
"Eason Oil Company,
"Oklahoma City, Okla.

"Dear Sir:

"I am enclosing herewith check to the Harry Reynolds Construction Company, amount $2,183.76, being balance due them on contract for erection of our filling station at Pennsylvania & Exchange Avenue; balance due $2,400 less their account to us $216.24.

"After talking this matter over with Mr. Reynolds and our attorney, Mr. Simons, we have come to the conclusion that we would go ahead and pay Mr. Reynolds, but before you deliver this check to him, please have him sign release of lien for his interest in this, and I suggest that you go with him and get individual release claims signed by each of the parties as follows for the amounts set forth opposite each:

| | |
|---|---|
| Harry Hayes | $125.00 |
| Capitol Hill Plumbing | 285.00 |
| Overhead Door Company | 265.00 |

| | |
|---|---|
| Griffith Electric Co. | 200.00 |
| M. A. Swatek Company | 524.58 |
| Blockie Furnace Co. | 275.00 |
| J. B. Klein Iron & Foundry | 146.28 |
| Arkala Sash & Door Company | 185.00 |
| Wm. McCaig | 80.00 |
| Wewoka Brick & Tile Co. | 112.17 |
| Standard Roofing & Mat. Co. | 101.89 |
| A. L. Baker | 19.50. |

"Please let us have a release for each of the above.

"Yours very truly,
"Eason Oil Company,
"A. A. Hatton."

It appears that the contractor in some manner obtained possession of the check, or the proceeds of the check from Mr. Biggs, and wholly failed to pay any part of the same to the plaintiffs here. The defendant, Eason Oil Company, failing to provide for the payment thereof, each of the plaintiffs perfected his lien in conformity with law, and by this suit are seeking the enforcement thereof. A jury was waived and the cause tried to the court, resulting in a judgment establishing the claims and liens of the several plaintiffs as herein shown.

The defendant argues its assignments of error in two propositions, to wit:

"The plaintiffs having for a valuable consideration, expressed, waived and released their lien rights and said waiver and release never having been canceled, recalled or rescinded, and said lien rights never having been revived, the lien rights of the plaintiffs became and continue to be effectually extinguished and the judgment of the lower court establishing the plaintiffs' respective claims as liens, is in disregard to the evidence and contrary to law.

"The plaintiffs are estopped from asserting liens by their conduct and by their act in causing to be delivered to the defendant a release and waiver of their lien rights, causing the defendant to alter its position by paying the money out to its material detriment if said liens can now be established and the decision and judgment of the lower court in establishing the respective claims of the plaintiffs as liens, is in disregard to the evidence and contrary to law."

We shall not attempt here to deal with the two propositions separately.

There is little dispute as to material facts, and the principal question is whether or not the facts are sufficient to sustain the judgment of the trial court, and whether or not their application here is in comformity with law. We observe at the outset that the defendant made full and final payment to the contractor within a period of 60 days from the completion of the building. Section 10977, O. S. 1931, dealing with liens by or through subcontractor, provides in part as follows:

"The risk of all payments made to the original contractor shall be upon such owner until the expiration of the 60 days herein specified, and no owner shall be liable to an action by such contractor until the expiration of said 60 days; and such owner may pay such subcontractor the amount due him from such contractor for such labor and material, and the amount so paid shall be held and deemed a payment of said amount to the original contractor."

In Hoggson Bros. et al. v. Dickason-Goodman Lumber Co. et al., 81 Okla. 31, 196 P. 686, this court, in dealing with section 10977, supra, adopted the following rule:

"Where a contract is made for the erection of a building, the contract price for the erection thereof constitutes a fund from which the subcontractors and those furnishing material to or performing labor for them are to be paid for their material and labor, and it is the duty of the owner and principal contractor to see that such fund is properly distributed to the persons entitled thereto."

This rule is reaffirmed and applied in Treece v. Carpenter, 92 Okla. 21, 222 P. 230. See, also, Hudson-Houston Lbr. Co. v. Parks et al., 91 Okla. 46, 215 P. 1072; Ketch et al. v. Cox et al., 105 Okla. 283, 232 P. 832; Antrim Lumber Co. et al. v. Mendlik, 110 Okla. 76, 236 P. 422; Aldridge v. Johnson et al., 132 Okla. 257, 270 P. 322; Newman v. Kirk et al., 164 Okla. 147, 23 P. (2d) 163.

It is true that subcontractors, materialmen, and laborers may waive their right to payment from the fund. Such waiver, however, must be supported by a consideration. 40 C. J. 314. In the instant case it appears that the contractor, immediately upon completion of the building, procured from the plaintiffs a written lien waiver showing as consideration therefor the payment of the several claims of the plaintiffs. Such instrument shows the amount of the several claims and indicates that it is given in consideration of the payment thereof, as shown by the amount set opposite the name of the signers of the instrument. This instrument was signed by plaintiffs and delivered to the contractor on April 11, 1931. The evidence shows that there was a failure of the

consideration named therein by virtue of the contractor's checks being returned unpaid. Dungan v. Jesko, 118 Okla. 217, 246 P. 1094; Mutual Life Ins. Co. v. Chattanooga Savings Bank, 47 Okla. 748, 150 P. 190; Bowles v. Biffles et al., 50 Okla. 587, 151 P. 193. Under such circumstances the waiver and receipt became ineffective for the purpose originally intended as between the parties with knowledge of the facts.

Defendant's principal contention seems to be, however, that the plaintiffs, having signed this written waiver and delivered the same to the contractor to be used by such contractor for the purpose of obtaining settlement with the defendant, are now estopped from denying the effectiveness thereof. This position would be well taken if the defendant acted in reliance thereon and without any knowledge of any defects therein. In such cases as the one at bar the question of reliance or knowledge of the facts is a question of fact to be determined by the court, and a general finding is a finding of each specific thing necessary to sustain the general finding. Watashe v. Tiger, 88 Okla. 77, 211 P. 415. And if the court's conclusion reached thereon is supported by the evidence, the same will not be disturbed on appeal. Watashe v. Tiger, supra; Broswood Oil & Gas Co. v. Mary Oil & Gas Co., 164 Okla. 200, 23 P. (2d) 387; Adams v. Hansford, 130 Okla. 155, 265 P. 762; Mulkey v. Anglin, 166 Okla. 8, 25 P. (2d) 778.

In this case there is competent evidence that the defendant had full knowledge of the failure of consideration, and that it did not rely upon the written waiver and receipt of April 11th, notwithstanding Mr. Hatton's testimony to the contrary.

It is undisputed here that when the contractor's several checks were unpaid, the plaintiffs informed defendant's agent in Oklahoma City of this condition, and were told by him that the defendant would give attention to the matter. This information was transmitted to the defendant's secretary, Mr. Hatton, who dealt directly with the contractor. The company's check was not drawn until April 22, 1930, and Mr. Hatton testified that he had this information from Mr. Biggs at the time. The check was not delivered to the contractor, but was sent to defendant's agent in Oklahoma City, with suggestions and instructions to obtain new receipts and waivers. Mr. Hatton testified that he did not recall whether or not he had full information as to just what checks had not been paid, and just what materialmen were dissatisfied, but clearly such information as he had was sufficient to put him on notice of a failure, or at least a partial failure, of consideration for the release and receipt of April 11th, and it is reasonable to conclude from all of this evidence, particularly in view of the method the defendant's secretary chose to disburse the funds, that he was conscious of serious defects in the original waiver and receipt. The trial court must have so concluded, and such conclusion is amply supported by the evidence.

We gather from defendant's brief that its position is that it had a right to rely upon the written waiver of April 11, 1931, upon the theory that such waiver was given the contractor so that he might obtain a settlement under his contract with the owner, thus enabling him to in turn pay plaintiffs the account of their claims, thus in effect making the contractor the plaintiffs' agent for the collection of their funds. Such theory might have been a proper question for our consideration had the trial court found in favor of the defendant, but in view of the finding of the trial court, which is necessarily contrary to this theory, which finding and conclusion is supported by competent evidence, we consider it unnecessary to determine whether or not the evidence here would have been sufficient to support the defendant's theory and contention in this regard.

Under section 10977, supra, and the decisions of this court, it was the plain duty of the defendant to see to it that the fund representing the consideration in its contract with the contractor was disbursed to the plaintiffs as their several interests appeared. At the time it paid the contractor it knew that the several plaintiffs had not received payment of their claims. The trial court concluded from competent evidence that it was not misled in this regard by the waiver of April 11th.

Finding no error, the cause is therefore in all things affirmed.

RILEY, C. J., and SWINDALL, OSBORN, BAYLESS, and BUSBY, JJ., concur. CULLISON, V. C. J., and ANDREWS and McNEILL, JJ., absent.