496 P.2d 693

Leo WEBER, Plaintiff-Respondent,

v.

EASTERN IDAHO PACKING CORPORATION, Inc., a corporation, and Anderson-Martin Farms, a co-partnership, Defendants-Appellants,

and

Dan Rietman, Defendant.

W. H. CROFT and Glen Croft, dba Croft Construction, Plaintiff-Respondent,

v.

EASTERN IDAHO PACKING CORPORATION, a corporation, and Anderson-Martin Farms, a co-partnership, Defendants-Appellants,

and

Leo Weber, Defendant.

No. 10692.

Supreme Court of Idaho.

May 1, 1972.

Herman E. Bedke, Burley, for appellant.

William A. Parsons, Parsons & Smith, Burley, for respondent, Croft.

Donald J. Chisholm, Goodman, Duff & Chisholm, Rupert, for respondent, Weber.

McFADDEN, Justice.

These appeals come from two lien foreclosure actions which resulted. in judgments for respondents Leo Weber and W. H. Croft and Glen Croft doing business as Croft Construction. The liens were filed to collect payment for subsoiling and rock removal operations on three adjoining par-

cels of appellants' land totaling 200 acres located in Cassia County. The actions were consolidated and tried to an advisory jury which returned answers to interrogatories essentially favorable to respondents. Those answers were adopted as part of its findings by the district court.

Respondents each conduct contract earth leveling and rock removal businesses. The owners of the land in question are Eastern Idaho Packing Corporation, owned by its president Dan Rietman, and Anderson-Martin Farms, a partnership. Rietman was authorized by these organizations to contract with third parties for the improvement of the 200 acres by ripping the topsoil and removing rocks, the goal being to make the land suitable for row crop farming.

In September, 1968, Weber met with Rietman at the latter's office where Rietman orally offered Weber the ripping and rock removal job. After a personal inspection of the land Weber accepted. Unfortunately, as the district court and its advisory jury found, the two men did not make a definite agreement "with respect to the rate of compensation to be paid to Weber for the services." Weber maintained he discussed the potential difficulties of the job and that their agreement was an hourly rate based on the type of equipment used; Rietman insisted he offered only $7.00 per acre.

Problems were encountered due to the actual conditions of the subsurface of the land. Weber's own equipment proved too light to tear through the rocks imbedded in the subsurface hardpan, many being sizeable. Weber therefore contracted with W. H. Croft who was in the same business but owned heavier equipment, i. e. D–7 and D–8 type tractors with special ripping attachments. Croft supplied the D–7 tractor and driver for $14 per hour and charged $16 per hour for the D–8 tractor with driver. A total of 491.5 hours of actual work time was spent by all respondents.

They never completed the job. In October, 1968, Croft and Weber visited Rietman hoping to get a progress payment on the work. Rietman informed them he had no obligation to the Crofts and only owed Weber $7 for each acre that was actually worked. Respondents, apprehending the schism, ceased operations on October 25, 1968, and timely filed mechanics' liens to recover the reasonable value of their services.

The evidence at trial established the job was indeed a substantial undertaking. Experienced operators using very heavy equipment still encountered rugged, time consuming obstacles. Although respondents did not complete their work the record shows the ripping was completed and what remained was the burying of some rock. Rietman testified he expended $500 to finish the work.

The district court found that while the parties had not agreed on the price, Rietman had ordered the work performed and accepted the benefits. These factors support the conclusion that a contract could be legally implied and that the consideration could be determined using reasonable standards. The district court and the jury found the $14 and $16 hourly rates to be reasonable for the Crofts' claim and $1,352 for the work exclusively performed by Weber, who used different equipment. Judgment was entered for Weber against appellants for foreclosure of his lien in the amount of $1,352 against the 200 acres. Judgment was entered for foreclosure of the Crofts' lien for $6,251. Each also recovered interest, costs, and attorney fees. Additionally, in the event the proceeds of the sheriff's sale on foreclosure proved insufficient, the court ordered deficiency judgments to be entered personally against appellants.

Appellants have assigned eleven errors of the court in their appeal which may be grouped in three categories. Additionally there is before the Court respondents' contested motions for attorney fees on appeal.

## ENFORCEABILITY OF THE WEBER-RIETMAN AGREEMENT

The facts of this case fit within the decisions of Fairchild v. Mathews, 91 Idaho 1, 415 P.2d 43 (1966), and Guyman v. Anderson, 75 Idaho 294, 271 P.2d 1020 (1954), where this Court allowed lien claimants to recover on the theory of quantum meruit for land leveling. The former case also concerned the failure of the parties to agree on the price to be paid for land leveling work and held that the district court properly resolved the dispute by allowing the workman to recover the reasonable value of his services performed on the defendant's land which were to defendant's benefit. In that case as in the present record, there was uncontroverted testimony from an impartial witness familiar with leveling work describing the prevailing rates charged for similar work. In the present case, the rates charged by respondents were at the lower end of the rate scale for the area.

█ Appellants' contention that there can be no lien as the jury found no "contract" flies in the face of the record. The parties reached an agreement that respondent was to perform certain work. Appellants' agent, Mr. Rietman, apparently an experienced businessman, made daily inspections as the work progressed and observed the heavy equipment being operated. The court found that the work performed improved the land. Considering the number of days worked and the equipment utilized Mr. Rietman was at least put on notice that the rate of $7.00 per acre was unreasonable, and that an inquiry on his part would have been appropriate.

█ In cases where one party has accepted valuable services under circumstances where he ought to pay, courts have implied a promise to pay and allowed recovery for the reasonable value of the services. Hixon v. Allphin, 76 Idaho 327,

281 P.2d 1042 (1955); Nagele v. Miller, 73 Idaho 441, 253 P.2d 233 (1953); Shurrum v. Watts, 80 Idaho 44, 324 P.2d 380 (1958). That reasoning is applicable to situations involving an attempt by a workman to recover for his services by the lien procedure. T. M. Deal Lumber Co. v. Vieux, 179 Kan. 760, 298 P.2d 339 (1956).

## THE SUBCONTRACTOR'S LIEN

Appellants raise two contentions here: (1) that the amount of the subcontractor's lien cannot exceed the prime contractor's lien; and (2) that the subcontractor is not entitled to an in personam deficiency judgment under the lien statutes.

██ As to the amount of the Crofts' lien, appellants' contention that the lien cannot exceed the prime contractor's lien is without merit. The value of the prime contract was the reasonable value of the services performed. The total value of all work performed was determined to be $7,603. Weber could have filed his lien for this amount and upon recovery paid over the amount due the Crofts. However, the Idaho lien statute, I.C. § 45-501, permits a subcontractor to independently file his lien; the workman's classification is unimportant in this regard, for the purpose of the lien is to protect the one who expends his labor to improve the land. Hill v. Twin Falls Salmon River Land and Water Co., 22 Idaho 274, 125 P. 204 (1912). Chief Justice Stewart's statement in that case is still very relevant:

"Under this statute [1] the Legislature evidently intended to grant the right to claim a lien, to any person who contributes labor or material for the construction, alteration, or repair of a building or structure upon real property. It will also be observed from the language of this statute that it was clearly the intent of the Legislature to grant an absolute lien direct upon the property, to the person who performs labor * * * with-

---

1. The reference is to I.C. § 45-501 which has since been amended in 1951 and 1971 in ways not affecting the value of the quoted statements. The statute now specifically provides liens for land leveling.

out reference to whether such person performing such labor * * * is an original contractor or a subcontractor, or a laborer or a materialman, and without reference to whether there is anything due the original contractor from the person or corporation constructing such building or other improvement * * *." 22 Idaho at 279, 125 P. at 206.

■ We turn now to whether the subcontractor may obtain a deficiency judgment against the landowners. I.C. § 45–512 as it read at the time judgment was entered provides in pertinent part:

"45–512. Judgment to declare priority.—* * *

3. Out of the remainder, if any, the subcontractors shall be paid in full, or pro rata if the remainder be insufficient to pay them in full, and the remainder, if any, shall be paid to the original contractor; *and each claimant shall be entitled to execution for any balance due him after such distribution* * * *." (Emphasis added.)

The provision of the statute is clear that the uncollected balance of the Crofts' lien, none of which duplicates part of Weber's lien, is treated as a personal judgment. Where, as here, the requirements for personal jurisdiction are met, the Crofts' lien is an effective personal judgment against appellants. Blake v. Crystalline Lime Co., On Rehearing 37 Idaho 637, 643, 221 P. 1100, 1101 (1923).

## FORECLOSURE AGAINST THE ENTIRE 200 ACRES

Appellants contend the extent of the lien foreclosures was too broad in that the court did not find what portion of the land in question was benefited as required by I.C. § 45–505 as applied in Idaho Lumber & Hardware Co. v. DiGiancomo, 61 Idaho 383, 102 P.2d 637 (1940).

■ That case concerned foreclosure of a materialman's lien against a structure which had been erected on the land. This Court applied the statute's requirement that the lien be only against the building together with the land "necessary for the convenient use and occupation of the dwelling for which the materials were furnished." That statutory restraint is not applicable here where there was no specific structure erected. The court below found work had been performed on 200 acres of land. This would indicate that the three parcels have been benefited as a farming unit as well as each specific area. *See:* Durfee v. Parker, 90 Idaho 118, 410 P.2d 962 (1965). Appellants have not pointed to any error in the property descriptions in the judgments, and therefore we presume the descriptions of the property in the judgments were accurate.

## ATTORNEY FEES ON APPEAL

Respondents have filed motions for attorney fees on this appeal, citing I.C. § 45–513.[2] Appellants oppose the motions relying on Hendrix v. Gold Ridge Mines, Inc., 56 Idaho 326, 54 P.2d 254 (1936). (*See also* Girard v. Defenbach, 61 Idaho 702, 106 P.2d 1010 (1940), which also employed the rule of statutory construction used in Hendrix v. Gold Ridge Mines, Inc.)

This Court in Hendrix v. Gold Ridge Mines, Inc., *supra,* held that what is now I.C. § 45–513 did not permit recovery of attorney fees on appeal for the lien claimants. The Court reasoned that this particular statute was adopted from the California lien statutes which expressly provided for attorney fees in the supreme court but since that proviso was deleted in the Idaho statute the intent of the legislature was to disallow attorney fees on appeal. We are urged by respondents to overrule Hendrix v. Gold Ridge Mines, Inc.

2. " § 45–513. Joinder of actions—Filing fees as costs—Attorney's fees.—Any number of persons claiming liens against the same property may join in the same action, and when separate actions are com- menced the court may consolidate them. The court shall also allow as part of the costs the moneys paid for filing and recording the claim, and reasonable attorney's fees."

Respondents rely primarily on Molstead v. Reliance Nat'l Life Ins. Co., 83 Idaho 458, 364 P.2d 883 (1961), a decision interpreting a statutory provision regulating insurance contract disputes. That particular statute, however, contained language broader than one finds in a § 45–513. The insurance statute referred to "any court in this state" whereas § 45–513 only refers to "the court" and in a context where the meaning is the "trial court." We note, also, the Hendrix v. Gold Ridge Mines rule was established in 1936 and the legislature has not seen fit to amend that statute to authorize attorney's fees on appeal in this type of case.

We have examined decisions from Washington, Haugen v. Raupach, 43 Wash.2d 147, 260 P.2d 340 (1953), and New Mexico, Skidmore v. Eby, 57 N.M. 669, 262 P.2d 370 (1953), as those jurisdictions allow recovery of attorney's fees on appeal in mechanics lien foreclosures. Those decisions, however, relied on specific statutory language referring to fees in the appellate courts. Idaho's statute is significantly different.

■ We are constrained by the clear precedent and the narrow context of the statute to follow Hendrix v. Gold Ridge Mines, Inc., and therefore deny respondents' motions for attorney fees on appeal.

The judgments are affirmed. Costs to respondents.

McQUADE, C. J., DONALDSON and SHEPARD, JJ., and MAYNARD, D. J., concur.