539 P.2d 590

John A. PIERSON, d/b/a Pierson Heating, Plaintiff-Respondent,

v.

Max F. SEWELL and Marian Sewell, husband and wife, Defendants-Appellants.

No. 11431.

Supreme Court of Idaho.

Aug. 8, 1975.

**40**

Lloyd J. Walker, Walker & Kennedy, Twin Falls, for defendants-appellants.

James T. Jones, Jerome, for plaintiff-respondent.

McQUADE, Chief Justice.

This is an action to foreclose a mechanic's lien. We affirm the judgment of the trial court insofar as it ordered the lien foreclosed. We find that the lien was timely filed and that the lien waiver signed by respondent was of no force or effect. However, we reverse the award of a deficiency judgment against appellants in the event that the proceeds of the foreclosure sale fail to satisfy respondent's claim, and also reverse that portion of the decree granting respondent a personal judgment against appellants for the amount due for materials and labor supplied.

Appellants are the owners of real property in Blaine County. Respondent, working as a subcontractor, furnished labor and materials beginning in October 1971, in connection with the installation of a heating system in a dwelling being constructed on appellants' property. The trial court found this work was done on a time and materials basis, computed by the lineal foot as the heating ducts were installed, this being customary in the trade.

During the construction of the dwelling, the general contractor, Butler Brothers, experienced financial difficulties. Subsequently, appellant Max Sewell had further progress payments to the general contractor withheld. In January 1972, Max Sewell requested from the various subcontractors, including respondent, lien waivers so that the lending institution would release the necessary funds. Each subcontractor executed a lien waiver. Respondent gave his lien waiver to appellant on January 13, 1972. The lending institution then disbursed the proceeds of the construction loan to the various subcontractors working on the dwelling with the exception of respondent. All the subcontractors were paid in full with the exception of respondent, who received nothing from the funds released by the lending institution. Respondent filed a notice of lien on March 9, 1972.

Several days after filing his notice of claim, respondent brought this cause of action to foreclose the lien. The trial court found that upon appellants' discovery of the prime contractor's financial difficulties, appellant Max Sewell assumed Butler Brothers' obligations arising from the construction of the dwelling. The trial court found that Sewell requested a lien waiver from respondent, the consideration for which was to be payment in full. The trial court also found that the notice of claim of lien was filed in accord with statute and that it had not been cancelled or otherwise discharged and that $2,195.85 was due respondent for the work performed and the materials furnished. The trial court ordered the lien foreclosed to satisfy respondent's claim, his attorney's fees in the sum of $750.00 plus costs in the amount of $203.15. The court held appellants liable for any deficiency if the proceeds of the foreclosure sale were insuffi-

cient to cover the amount due, plus attorney's fees and costs. The trial court also allowed recovery of a personal judgment against appellants for the total amount awarded.

■ Appellant urges eleven assignments of error which can be summarized into three main issues:

(1) Did respondent file a valid and timely notice of claim of lien as a prerequisite for instituting this action;

(2) Did respondent waive his right to a claim of lien by execution of the lien waiver on January 13, 1972; and

(3) Are appellants subject to a personal judgment for the amount awarded?

Many of appellants' assignments of error deal with factual findings made by the trial court. We re-affirm the rule many times stated, that the credibility of, and weight given to, the evidence presented at trial is exclusively the province of the trial judge when the court acts as finder of fact. *Ivie v. Peck.*[1] It follows that findings of fact supported by substantial, competent, although conflicting, evidence will not be disturbed on appeal. *Id.*[2]

■ Mechanic's and other related liens are creatures of statute, and statutory requirements must be substantially complied with in order to perfect a valid lien. *Boone v. P. & B. Logging Company.*[3] Yet, these lien statutes are to be liberally construed: "The provisions of our mechanics' and laborers' lien law, as well as all other lien statutes, must be liberally construed with a view to effect their objects and promote justice." *Seafoam Mines Corp. v. Vaughn.*[4] The purpose of these statutes is to compensate persons who perform labor upon or furnish material to be used in the construction, alteration or repair of a building or structure. *Boise Payette Lumber Co. v. Weaver.*[5]

The evidence shows that respondent subcontractor contracted with the prime contractor, Butler Brothers, to install a heating system in the construction of appellants' dwelling. As such, Pierson supplied materials and labor through his employees and, therefore, has by I.C. § 45–501 a right to a lien on the dwelling. To perfect that lien, a subcontractor, such as respondent, must file a notice of claim of lien within sixty days following the subcontractor's cessation of labor or furnishing of materials. I.C. § 45–507.

■ Appellants first argue that the trial court erred in finding that respondent furnished labor and materials on January 14, 1972, in order to complete his subcontract in connection with the construction of appellants' dwelling. They claim respondent's employees completed their work on the dwelling in December 1971, and therefore, the lien was not timely filed. Upon examination of the record we find ample, competent, although conflicting evidence to support the trial court's finding that respondent performed labor and supplied materials on January 14, 1972.

Assuming *arguendo* that respondent's employees did furnish labor and materials on January 14, 1972, appellants argue that work was of a trivial nature not extending the time for the running of the lien. They argue that construction of the dwelling, including the heating system, was substantially completed in December, with the sixty-day period for filing a notice of claim

1. 94 Idaho 625, 495 P.2d 1110 (1972). *See Durfee v. Parker*, 90 Idaho 118, 410 P.2d 962 (1965).

2. *Accord, Perry Plumbing Co. v. Schuler*, 96 Idaho 494, 531 P.2d 584 (1974); *Mitchell v. Flandro*, 95 Idaho 228, 506 P.2d 455 (1972).

3. 88 Idaho 111, 397 P.2d 31 (1964). *See Layrite Products Company v. Lux*, 91 Idaho 110, 416 P.2d 501 (1966).

4. 56 Idaho 342, 352, 53 P.2d 1166, 1170 (1936). *Accord, Durfee v. Parker, supra* n. 1; *Mine Etc. Co. v. Idaho Etc. Mines Co.*, 20 Idaho 300, 118 P. 301 (1911).

5. 40 Idaho 516, 234 P. 150 (1925). *Accord, McGill v. McAdoo*, 35 Idaho 283, 206 P. 1057 (1922); *Chamberlain v. City of Lewiston*, 23 Idaho 154, 129 P. 1069 (1912). *See Weber v. Eastern Idaho Packing Corporation*, 94 Idaho 694, 496 P.2d 693 (1972).

running from that time. Thus, the March 9, 1972, filing would be untimely.

We re-affirm the principle followed in *Mitchell v. Flandro* [6] that the sixty-day period for the filing of liens cannot be extended or revived by the furnishing of trivial labor or materials once the contract has been completed.

> "Ordinarily, *furnishing an article or performing a service trivial in character is not sufficient to extend the time for claiming a lien or to revive an expired lien, where the article is furnished or the service rendered after a substantial completion of the contract, and the article is not expressly required by the terms thereof.*"[7]

When additional material or labor is relied upon to extend the time for filing of the claim, the lien claimant must show that the materials or labor were actually used in constructing or repairing the structure, and that they were reasonably necessary to complete construction according to the terms of the contract.[8]

Evidence was presented to the effect that one of respondent's employees spent a "good half day" installing registers, changing two air ducts and replacing the thermostat. Respondent testified that this so-called "finishing" work was considered the final work under the contract and is customarily done in the trade. The trial court's finding that the work of January 14, 1972, was done as part of the contract and therefore that the lien of March 9, 1972, was timely filed is supported by the record.

Appellants next argue that the trial court erred in failing to find that the lien waiver executed on January 13, 1972, waived respondent's lien rights. The trial court found that appellant Max Sewell personally asked the respondent for a lien waiver with the understanding that the waiver was necessary so that the money from the construction loan would be released by the lending institution in order to pay respondent.

Pierson testified that prior to the execution of the waiver, Max Sewell, directly or by inference, guaranteed that if Pierson completed his subcontract he would be compensated. Max Sewell denied this. He testified that he realized that the funds from the construction loan would not be sufficient to pay all the subcontractors; but upon his understanding that Butler would arrange to compensate Pierson, he secured lien waivers from all of the subcontractors so that the lending institution would disburse the proceeds from the construction loan to pay all the subcontractors with the exception of Pierson. Whatever may have been Pierson's motivation for executing the lien waiver, *i. e.*, receipt of payment upon disbursement of the loan monies by the lending institution, evidence is lacking to indicate that the parties expressly *agreed* that payment would be forthcoming to Pierson from Sewell based upon his execution of the waiver. Taken at face value, the testimony of both parties indicates that they had different intentions at the time of execution of the lien waiver, intentions never expressed, as to the purpose and effect of that waiver. Clearly, there was no meeting of the minds. The minds of the parties must meet on all terms before a contract is formed.[9]

The general rule is that an express waiver of a mechanic's lien must be supported by consideration in order to be effective and binding. *McCorkle v. Law-*

6. *Supra* n. 2. *Accord, Gem State Lumber Co. v. Witty,* 37 Idaho 489, 217 P. 1027 (1923).

7. 95 Idaho at 231, 506 P.2d at 458.

8. *See Gem State Lumber Co. v. Witty, supra* n. 6.

9. *Turner v. Mendenhall,* 95 Idaho 426, 510 P.2d 490 (1973). *See Pacific Lumber & Timber Co. v. Dailey,* 60 Wash. 556, 111 P. 869 (1910).

*son & Co., Inc.*[10] Accepting the trial court's characterization, the instant consideration would be promise of payment in full. Where such consideration fails, the lien waiver is of no effect. 10 Thompson on Real Property (1957) states: "The right to a lien is not waived by an agreement of waiver executed in consideration of a promise which was not performed." [11] For the above reasons, the purported waiver failed and was of no effect.

■ Appellants' final contention is that the trial court erroneously held them liable for the amount due on the labor and materials provided by respondent. We find that the trial court erred in granting respondent a personal judgment against appellants for the total amount due on respondent's claim and also find that the trial court erred in awarding respondent a deficiency judgment against appellants for any portion of the claim which may remain unsatisfied after the foreclosure sale.

■ The trial court found that respondent provided his services at the request of appellants and that this *contractual* relationship between respondent and appellants was on a time and materials basis. While I.C. § 45–501 provides that the contractor "shall be held to be the agent of the owner . . . ." this relationship applies only for purposes of mechanics' and materialmen's liens and their foreclosure,[12] and does not encompass the usual agency relationship, whereby, a contract made by an agent is deemed to exist between principal and the contracting third party.[13]

The evidence does not support the trial court's finding that appellants initially contracted directly with respondent for the furnishing of a heating system and labor in installing that system; and in fact, the pre-trial order is to the contrary. The finding that a direct contractual relationship existed between appellants and respondent from the commencement of work, outside the relationship implied in I.C. § 45–501 *et seq.*, must be set aside. *Wood v. Sadler.*[14]

■ The trial court also found that appellant Max Sewell assumed the contract and obligations of the general contractor, Butler Brothers Construction Company, when that firm encountered financial difficulties during construction of the dwelling. The record indicates that Max Sewell was instrumental in securing lien releases from the various subcontractors, including respondent. The record does not demonstrate that Max Sewell took the further step and assumed the building contract and the obligations of the general contractor. We note that respondent testified that several homeowners, including appellants, took over the "money payout" when Butler Brothers experienced financial difficulties. But, Mr. Butler testified that bills for labor and supplies were submitted directly to the lending institution and were disbursed directly by that institution. Butler also testified that Sewell did not take over the

10. 259 S.W.2d 27 (Ky.Ct.App.1953); *Ramsey v. Peoples Trust & Savings Bank*, 148 Ind.App. 167, 264 N.E.2d 111 (1970); *Beebe Const. Corp. v. Circle R Co.*, 10 Ohio App.2d 127, 226 N.E.2d 573 (1967); *Eason Oil Co. v. M. A. Swatek & Co.*, 169 Okl. 170, 36 P.2d 504 (1934); *McLellan v. Hamernick*, 264 Minn. 345, 118 N.W.2d 791 (1962); *G. R. Sponaugle & Sons, Inc. v. McKnight Const. Co.*, 304 A.2d 339 (Del.Super.1973).

11. § 5227, p. 440. *See United States Gypsum Co. v. Randall*, 300 Ill.App. 610, 21 N.E.2d 327 (1939); *Elder Merchantile Co. v. Ottawa Inv. Co.*, 100 Kan. 597, 165 P. 279 (1917); *Eason Oil Co. v. M. A. Swatek & Co.*, 169 Okl. 170, 36 P.2d 504 (1934). *Cf.*

*Pacific Lumber & Timber Co. v. Dailey*, 60 Wash. 566, 111 P. 869 (1910); *Foley v. Hialeah Race Course*, 53 So.2d 771 (Fla. 1951); *Giammarino v. J. W. Caldewey Const. Co.*, 72 S.W.2d 159 (Mo.App.1934).

12. *Valley Lumber Etc. Co. v. Nickerson*, 13 Idaho 682, 93 P. 24 (1907). *Cf. Boise Payette Lumber Co. v. Weaver*, 40 Idaho 516, 234 P. 150 (1925).

13. *See Riggen v. Perkins*, 42 Idaho 391, 246 P. 962 (1926); *Valley Lumber Etc. Co. v. Nickerson*, 13 Idaho 682, 93 P. 24 (1907).

14. 93 Idaho 552, 468 P.2d 42 (1970). *See* Rule 16, I.R.C.P.

job, did not direct the workers, did not assume or pay out for the payroll or other bills incurred, and did not in any other way assume the obligations of Butler Brothers in regard to the dwelling. The above finding of the trial court must also be set aside for lack of sufficient evidence. *Id.* Since the evidence is insufficient to support the finding that appellants assumed the contract, and since in the instant case there is no privity of contract arising out of the owner-subcontractor relationship,[15] a personal judgment cannot be sustained against appellants on a contract theory. Lien foreclosures under I.C. § 45–501 *et seq.* are strictly actions *in rem* and are not *in personam* proceedings: "The lien statute operates *in rem*, and not *in personam*. It creates no personal charge against the owner of the property, but rather a charge against the property to the extent of its value."[16] This case is readily distinguishable from those cases wherein the lien was based upon labor or materials provided in accord with an express or implied contract between the lien claimant and the possessor of the interest against which the lien had been levied.[17] The decree of personal judgment against the Sewells for the amount due for labor and materials, plus attorney's fees and costs, is set aside.

■ The trial court also awarded a personal judgment against the Sewells for any deficiency that might remain after the foreclosure sale. In *Weber v. Eastern Idaho Packing Corporation*,[18] the relevant provisions of I.C. § 45–512 [19] were interpreted as allowing a lien claimant to treat that portion of the claim which remains unsatisfied after distribution of the proceeds of the foreclosure sale as a personal judgment against the defendants owning the lien-encumbered interest. In examining *Weber*, we find that the above holding relies upon a case which does not support that proposition. That holding, therefore, is without supporting authority.

The provisions of I.C. § 45–512 dealing with the priority of distribution and recourse available to a lien claimant in the event of deficiency of proceeds from the foreclosure sale are ambiguous. While subsection three provides that ". . . each claimant shall be entitled to execution for any balance due him after such distribution; . . ." the statute fails to specify what party or parties said execution may be had against. In an attempt to clarify that defect, this Court must construe the section in light of the intention and purposes for which the legislature enacted the particular act. *Bush v. Oliver*.[20] As we noted above, I.C. § 45–501 *et seq.* provides for an *in rem* proceeding which creates no personal charge against the owner of the property, but which creates a lien against the property itself, to the extent of its value, in order to secure payment to the lien claimant for his labors or materials used to improve the property.

■ The interpretation of I.C. § 45–512 found in *Weber* is inconsistent with

---

15. *See Mitchell v. Flandro*, 95 Idaho 228, 506 P.2d 455 (1972); *Clark Lumber Company v. Passig*, 184 Kan. 667, 339 P.2d 280 (1959).

16. *Chamberlain v. City of Lewiston*, 23 Idaho 154, 164, 129 P. 1069, 1071 (1912). *Accord, Valley Lumber Etc. Co. v. Nickerson, supra* n. 13. *See Mitchell v. Flandro, supra* n. 15; *Weeter Lumber Co. v. Fales*, 20 Idaho 255, 118 P. 289 (1911).

17. *See Ross v. Olson*, 95 Idaho 915, 523 P.2d 518 (1974); *Mitchell v. Flandro supra* n. 15; *Blake v. Crystalline Lime Co.*, 37 Idaho 637, 221 P. 1100 (1923).

18. 94 Idaho 694, 496 P.2d 693 (1972).

19. I.C. § 45–512: "*Judgment to declare priority.*—. . . And in case the proceeds of sale under this chapter shall be insufficient to pay all lienholders under it: . . . 3. Out of the remainder, if any, the subcontractors shall be paid in full, or *pro rata* if the remainder be insufficient to pay them in full, and the remainder, if any, shall be paid pro rata to the original contractor and the professional engineers and licensed surveyors; *and each claimant shall be entitled to execution for any balance due him after such distribution;* . . ." Emphasis added.

20. 86 Idaho 380, 386 P.2d 967 (1963). *See Jorstad v. City of Lewiston*, 93 Idaho 122, 456 P.2d 766 (1969).

the purposes and intentions of the mechanics and materialmen's lien statutes as noted above. To the extent that case construes I.C. § 45–512 to provide that a subcontractor may recover a personal judgment against the owner of the lien-encumbered interest, simply by virtue of the subcontractor-owner relationship, *Weber* is hereby overruled. We reaffirm earlier decisions of this Court that the agency relationship specified in I.C. § 45–501 is only for the purposes of binding the property in respect to the lien and does not bind the owner *personally* for the amount of the claim. *Valley Lumber Etc. Co. v. Nickerson.*[21] The subcontractor must look to that person with whom he is in a direct contractual relationship for relief if a portion of his claim under the lien remains unsatisfied after foreclosure. Only where there is a direct contractual relationship, either express or implied, may a personal judgment be had. Since the evidence is insufficient to sustain the trial court's finding that the Sewells assumed the obligations of the general contractor, and thus was in the requisite privity with subcontractor Pierson, the award of a personal deficiency judgment against appellants was erroneous.

In its decree, the trial court awarded respondent ". . . the sum of $750.00 as attorney's fees for preparing the lien and bringing this action to foreclose the same, . . ." I.C. § 45–513 does not allow a fee for preparation of the lien. *Guyman v. Anderson.*[22] The trial court is instructed to reduce the award of attorney's fees by the amount it finds was expended in preparing the lien.

The judgment is *affirmed* in part, *reversed* in part, and *remanded* with instructions.

Costs to respondent.

DONALDSON, SHEPARD and BAKES, JJ., concur.

McFADDEN, Justice (concurring in part and dissenting in part).

I concur in the foregoing opinion insofar as the majority holds that the respondent, Pierson, was entitled to a lien on the appellants', Sewell's, property which respondent was entitled to foreclose. However, I dissent from that portion of the opinion which holds that the respondent is not entitled to a personal judgment against appellants and to a deficiency judgment for any balance due after sale of the premises.

The majority opinion recognizes, in its discussion concerning the validity of the lien waiver executed by Pierson, that on several occasions prior to the execution of the waiver, Sewell agreed if Pierson completed his subcontract he would be compensated. The record also discloses that Sewell, Butler, and a Mr. Martin who was representing the loaning institution, met to discuss Butler's financial problems. At this time, early in January, it became apparent that the amount of money the financing institution held to disburse for the job was insufficient to pay all outstanding bills against the Sewell contract. It was also recognized that the shortage in available funds was about the balance due to Pierson for the material and work he had furnished and performed on the Sewell home. There was also testimony that there was an undetermined amount of money due on the Butler contract over and above the contract price because of "extras" furnished at Sewell's request, and that Sewell rejected an offer from the lending institution to loan him additional funds with which to pay. The record also discloses that one of the reasons that Sewell rejected the opportunity to borrow additional funds was that he was expecting to

---

21. 13 Idaho 682, 93 P. 24 (1907). *Accord, Chamberlain v. City of Lewiston,* 23 Idaho 154, 129 P. 1069 (1912). *Weeter Lumber Co. v. Fales,* 20 Idaho 255, 118 P. 289 (1911). *See Mitchell v. Flandro,* 95 Idaho 228, 506 P.2d 455 (1972); *Riggen v. Perkins,* 42 Idaho 391, 246 P. 962 (1926).

22. 75 Idaho 294, 271 P.2d 1020 (1954).

receive funds from commissions for real estate sales.

When it was determined that there were insufficient funds remaining with the lending institution to pay all claims Butler and Sewell discussed the relationship between Butler and Pierson to the effect that Butler and Pierson had worked together on many construction contracts, and that when necessary Pierson had on previous occasions been agreeable to giving Butler additional time to meet the obligation. Following this discussion it was determined that Sewell would get lien waivers from all claimants and that all except Pierson would be paid their claims, without prorating the money available from the lending institution.

When Sewell approached Pierson to obtain his lien waiver, Pierson's expectation was that he would execute the lien waiver so that he could be paid for his claim from funds disbursed by the lending institution. The sole purpose of execution of this waiver, in Pierson's thinking, was so that Sewell could have the funds made available by the lending institution for disbursement to the claimant. Pierson was not advised that all other claimants . who executed waivers were to be paid, except himself. Under these circumstances, it is my conclusion that there was an implied offer by Sewell to the effect that if Pierson would execute the waiver, that Sewell would see the claim was paid, and the execution of the waiver which was for Sewell's benefit was Pierson's acceptance of this offer. See, Calamari & Perillo, Contracts, § 73 (1970).

· At the time that Sewell obtained the lien waiver from Pierson, he obligated himself to see that Pierson obtained his money—i. e., he thus assumed this as a personal obligation. Sewell then used this lien waiver as the basis for having the lending institution release the funds for payment to all other claimants, and thus Sewell obtained the benefits of this agreement to that extent. See, Calamari & Perillo, *supra,* § 286(b). It is my conclusion that Sewell

having received these benefits, the fact that Pierson subsequently filed his lien notwithstanding the waiver did not in any way affect the prior personal obligation Sewell assumed in order to obtain the lien waiver.

It is to be noted that it was Sewell, and not Butler, who conducted the negotiations to obtain the lien waiver from Pierson, and Sewell was a real estate salesman assumedly experienced in real estate transactions. Under these facts it is my opinion that Sewell became personally obligated to pay Pierson, and that the judgment of the trial court should be affirmed.