607 P.2d 1082

**AGRI–TECH, INC., an Idaho Corporation, Plaintiff-Appellant,**

v.

**Victor YAMAMOTO, Yamamoto Farms, Inc., and John Doe I, John Doe II, and John Doe, III, Defendants-Respondents.**

**No. 12841.**

Supreme Court of Idaho.

March 13, 1980.

Frank J. Dykas, Buhl, for plaintiff-appellant.

Wayne E. Davis of Alexanderson, Davis, Rainey & Whitney, Caldwell, for defendants-respondents.

PER CURIAM.

I.

Plaintiff-appellant Agri-Tech, Inc. was a subcontractor to a contract between defendant-respondent Yamamoto Farms, Inc. (hereinafter "Yamamoto") and Garco Steel (now insolvent). Garco contracted to convert a building to make it suitable for storage of 1,000 tons of potatoes by October, 1975, which required the provision of an adequate ventilation system. An oral contract was made simultaneously between Garco and Agri-Tech whereby Agri-Tech

would furnish the ventilation system for the building by October for a price of approximately $8,000.

By October 7, 1975, Agri-Tech had completed most of the work on the ventilation system; the system was operable, but lacked a low temperature safety device, humidity control system and a sensor box with remote air sampling capabilities. These latter parts were such as were customarily installed in such systems, but they had not arrived in time; Agri-Tech subjectively intended to later install them. On October 29, 1975, Agri-Tech hired a local electrician to install a provisional system.

On October 7, 1975, Victor Yamamoto (representing Yamamoto Farms), J. C. Campbell (representing Garco) and Bill Sellers (representing Agri-Tech) met to discuss the project. Campbell informed Yamamoto that the project was completed, including the ventilation system. Sellers did not contradict this statement, but assured Yamamoto that if he had any questions about the ventilation system Sellers would be glad to assist him. Yamamoto then paid Garco in full the unpaid balance on the contract. Yamamoto had begun storing potatoes in the building in late September, 1975, and continued doing so throughout the season. The potatoes were taken out of storage in March, 1976, in good condition.

Agri-Tech was paid $800 by Garco as an initial down payment, but has received no further payment. On October 24, 1975, Agri-Tech billed Garco for the full contract price of the work, less certain credits, including a provision for work to be done by the local electrician. Agri-Tech mailed a complete and final bill to Garco on January 26, 1976, for a balance due of $5,929.87. Garco had run into financial difficulties toward the end of 1975 and closed its doors in April, 1976.

The parts Agri-Tech had ordered for the ventilation system arrived in February, 1976, and were installed on February 25 and 26, at a cost for parts and labor of $850. On April 7, 1976, Agri-Tech filed a materialmen's lien against Yamamoto's property, claiming the entire amount due under the contract. Following a trial on November 17, 1977, the trial court found that Agri-Tech's lien was valid only to the extent of the labor and materials supplied in February, 1976, together with attorney fees.

## II.

■ The issue on appeal is whether the trial court correctly found that the lien failed as to the October work because it was "substantially complete" more than 60 days before the lien was filed. (We note in passing an apparent contradiction: the trial court found that the work required by the contract was substantially complete in October; yet it found that the February work was lienable despite the fact that Yamamoto had neither requested, nor as far as the record reflects, authorized, the February repairs. Nevertheless, the lien for the work in February was not contested on the appeal and we will not consider the problem further.) The trial court found that the work done in February, 1976, was not required by the contract, since the nature of the ventilation system was not specified, and the one which was installed in October, while suboptimal by Agri-Tech's standards, did function satisfactorily. The trial court also found that the project was substantially complete in October, and that the work done in February was trivial. While other reasonable minds might have reached a different conclusion, the trial court's findings of fact are supported by substantial competent evidence and therefore will not be disturbed on appeal. *Pierson v. Sewell*, 97 Idaho 38, 539 P.2d 590 (1975).[1]

---

1. Our statutory law and the facts of this case suggest problems where the owner and supplier have different understandings of when the sixty days commences to run, *i. e.*, the completion date is not readily observable, resulting either in the supplier losing his right to a lien or the owner subject to liability which he thought was extinguished.

The aforesaid meeting on October 7, 1975, between the owner, the prime contractor and the subcontractor fixed a date when the statutory time for filing began to run. Agri-Tech's failure to object to (or in any other way advise Yamamoto to the contrary of) Garco's declaration that the project was complete supports the trial court's findings and precludes Agri-Tech from later complaining that it did not consider the work fully done. The trial court so found, and this Court will not disturb that finding. The judgment is affirmed with costs to respondent.

In some jurisdictions this problem is avoided. In Hawaii, for example, the statute of limitations on a mechanic's or materialman's lien (45 days) begins to run from the date the owner (or in some cases the contractor) completes publication of a notice that the improvement has been completed or abandoned. HRS 507–43(f). The notice is not effective if there has not been substantial completion or actual abandonment of the improvement, thus leaving some risk on the owner, but it does insure that materialmen have adequate warning that the statute of limitations is running.